829 P.2d 1361

**Albert E. BLASER, Plaintiff–Appellant,**

**v.**

**Harvey A. CAMERON and Katherine M. Cameron, husband and wife, Defendants–Respondents.**

**No. 18592.**

Court of Appeals of Idaho.

Sept. 4, 1991.

Rehearing Denied April 24, 1992.

Wyman & Wyman, Boise, for plaintiff-appellant. Jon N. Wyman argued.

Ringert, Clark, Harrington, Reid, Christenson & Kaufman, Boise, for defendants-respondents. David Hammerquist argued.

SILAK, Judge.

Albert E. Blaser appeals from an order of the district court dismissing the complaint in which he sought to foreclose on a vendor's lien and to recover sums allegedly due pursuant to an earnest money agreement between Blaser and Harvey A. Cameron and Katherine M. Cameron, husband and wife. For the reasons stated below, we affirm.

On May 24, 1974, Blaser and the Camerons signed an earnest money agreement (the Agreement) whereby the Camerons were to purchase from Blaser a lot in his subdivision in Garden Valley, Idaho. The Agreement further provided that Blaser was to construct a cabin on the lot for the Camerons. The Camerons paid Blaser $10,000, and in addition, they were to provide certain services to Blaser to offset a portion of the remaining cost of the cabin.

On July 1, 1976, the Camerons filed a complaint against Blaser and his wife alleging in part that the Blasers had failed to provide water to the property as agreed and requesting specific performance of the parties' contract in that regard. On November 30, 1976, prior to the trial of the action filed by the Camerons, Blaser recorded a vendor's lien against the property. On January 28, 1977, after the trial, the

district court concluded, *inter alia*, that the Blasers had breached the contract between the parties by not providing water to the Camerons' cabin. The court ordered the Blasers to provide the Camerons with an adequate domestic water supply. The court also entered a judgment in favor of the Camerons and dismissed the Blasers' counterclaim.

On January 29, 1982, Blaser filed a suit against the Camerons to foreclose on the vendor's lien and to recover sums allegedly due pursuant to the Agreement. The district court dismissed Blaser's complaint on the basis that it was barred by the doctrine of *res judicata*, and Blaser appealed. This Court vacated the district court's order and remanded the case for a decision on the merits. *See Blaser v. Cameron*, 116 Idaho 453, 776 P.2d 462 (Ct.App.1989). On remand, after trial the district court entered an order dismissing Blaser's claims and entered a judgment in favor of the Camerons in the amount of attorney fees and costs.

It is this last order from which Blaser now appeals, arguing that the district court erred in concluding that Blaser breached the contract, that his breach excused the Camerons' performance of their part of the contract, and that the Camerons were not unjustly enriched. Blaser also contends that the district court erred by failing to make findings of fact as to the reasonable value of the work he performed.

### Breach of Contract

Blaser argues that there was insufficient evidence to support the district court's finding that Blaser prevented the Camerons' performance by failing to provide them with the opportunity to perform the services for which the parties contracted, and by creating an atmosphere in which working together was impractical. Based on these findings, Blaser argues that the district court erroneously concluded as a matter of law that Blaser breached the contract and that, therefore, the Camerons' performance was excused.

On appeal from a mixed question of law and fact, this Court will defer to findings of fact based upon substantial evidence, but we exercise free review over questions of law. *Staggie v. Idaho Falls Consol. Hospitals,* 110 Idaho 349, 351, 715 P.2d 1019, 1021 (Ct.App.1986). In reviewing findings of fact, we do not weigh the evidence, nor do we substitute our view of the facts for that of the trial judge. *Ortiz v. Department of Health & Welfare,* 113 Idaho 682, 683, 747 P.2d 91, 92 (Ct.App. 1987). Findings cannot be deemed clearly erroneous if they are supported by substantial, even though conflicting, evidence in the record. *Ortiz* at 683–84, 747 P.2d at 92–3; *Rasmussen v. Martin,* 104 Idaho 401, 404, 659 P.2d 155, 158 (Ct.App.1983). Evidence is substantial if a reasonable trier of fact would accept and rely upon it in determining whether a disputed point of fact has been proven. *Ortiz* at 684, 747 P.2d at 93. This standard of review reflects the view that deference must be accorded to the trial court's special opportunity to assess and weigh the credibility of the witnesses who appear before it. *State v. Tierney,* 109 Idaho 474, 476, 708 P.2d 879, 881 (1985); *Ortiz* at 684, 747 P.2d at 93; I.R.C.P. 52(a). In addition, the party challenging the findings has the burden of showing error, and this Court will review the evidence in the light most favorable to the prevailing party. *Martsch v. Nelson,* 109 Idaho 95, 100, 705 P.2d 1050, 1055 (Ct.App.1985).

As noted by the district court, the Agreement is not a model of precision in establishing the agreement of the parties. The Agreement did not contain terms regarding the amount or kind of services the Camerons were to provide, nor did it contain the total price for the lot and for construction of the one-room cabin. The Agreement acknowledges the receipt by Blaser of $10,000 from the Camerons and states:

Will build cabin according to plans for Ten Thousand Dollars and any additional amount over Ten Thousand will be paid for by labor performed by Buyers.

....

It is hereby agreed that the total purchase price is the sum of Ten Thousand Dollars Plus.[1]

The district court, sitting without a jury, heard the testimony of several witnesses on July 6 and 7, 1987. Harvey Cameron's testimony was submitted by way of his deposition taken December 21, 1983.[2] There were few things upon which the parties agreed. They agreed that the Camerons paid Blaser $10,000, that Blaser was to construct a one-room cabin according to the Camerons' plans with the Camerons to complete the interior of the cabin, and that Blaser's part of the work was not completed until water was supplied to the cabin in 1979. They also agreed that the Camerons, in order to "work out" the balance of the purchase price, were to show lots in the subdivision to other prospective buyers, maintain the subdivision's water system, take water samples, and provide security in the subdivision when other homes were built.

The record reveals conflicting evidence regarding every other aspect of the Agreement. Blaser testified that there was no agreement on the total price of the lot and finished cabin, because there was no way to know the total cost of constructing the cabin when the Agreement was signed. Both Camerons testified that Blaser had given them, before the parties signed the Agreement, a written estimate of $3,500 for the cost of finishing the cabin.

Blaser testified that the Camerons could have taken water samples and could have done the security work without direction from Blaser, but that they did not, and they did not offer to do this work. Mrs. Cameron testified that it was Blaser's responsibility to dig the wells that the Camerons were to maintain and that Blaser did not contact them regarding work he wanted them to perform. In addition, both Camerons testified that there were no wells to maintain until 1979. Mr. Cameron

1. There is nothing in the record to indicate that any amount over $10,000 was secured by a note.

2. Harvey died on January 18, 1984.

testified that he had helped with some of the construction of the cabin's exterior, but that he had not kept records as to the amount of work he performed.

Blaser testified that he could not send prospective buyers to talk with the Camerons, because Mr. Cameron had threatened Blaser and told Blaser not to communicate with him. Mrs. Cameron testified that the Camerons never sent away people who wanted to look at the property and that when people came and asked questions, the Camerons answered the questions. She also testified that she sold one lot for $5,000 cash, for which Blaser was to pay her a small fee, but he later refused to pay.

Blaser submitted various estimates of the cost of constructing the cabin, and he represented that the estimates reflected his actual costs or were below his actual costs.[3] Blaser did not offer into evidence the actual receipts for materials used in constructing the cabin; he testified that he did not keep business records for more than five years.

Bruce Blaser, the appellant's son, was the job foreman during construction of the cabin. He testified that Mr. Cameron told him that he (Cameron) had "run off" two interested buyers. Bruce Blaser also testified that in a cost-plus contract, the cost-plus is usually negotiated, a percentage or flat fee is "agreed to up front," and the contractor gives receipts for materials to the property owner. Mr. Cameron testified that Blaser did not submit bills, expenses, or costs to the Camerons during construction of the cabin. Mrs. Cameron testified that after the conclusion of the previous suit when water to the water system was installed, Blaser sent them no bills, and she

thought they had no further obligation to him.

There was also conflicting testimony regarding the quality of the materials used in construction of the cabin. Sheldon Carter, a retired plastering contractor who did the plastering on the interior of the cabin, testified that Blaser provided poor quality building materials for construction of the cabin. Bruce Blaser testified that the materials were standard quality or better.

This record reveals that a material part of the parties' oral agreement was that the Camerons could "work out" the balance of the construction cost by monitoring the water system which Blaser was to install in the subdivision. If such a water system existed, it was not until after the Camerons obtained a court order requiring Blaser to supply their cabin with water and after Blaser recorded a vendor's lien against the Camerons' property. Obviously, installation of a water system was a condition precedent to the monitoring or maintenance of such a system.

There is substantial, although conflicting, evidence in the record to support the district court's finding that Blaser prevented the Camerons' performance by not giving them much work to do and by creating an atmosphere in which working together was impractical. The district court was correct in concluding that Blaser breached the contract and that Blaser's breach excused the Camerons' performance. *See Fish v. Fleishman*, 87 Idaho 126, 391 P.2d 344 (1964); *McOmber v. Nuckols*, 82 Idaho 280, 353 P.2d 398 (1960).

---

**3.** Plaintiff's Exhibit 3 (admitted): $25,657. This document was prepared after the start of the 1976 litigation, and the figure does not reflect the $10,000 down payment.

Plaintiff's Exhibit 6 (admitted): $40,110. This document was prepared December 23, 1976. The figure does not reflect the $10,000 down payment, but does include $5,500 for drilling the Camerons' well and $5,000 for rent furnished by Blaser to the Camerons while they were unable to occupy the waterless cabin.

Other evidence of the value of the property or the value of services performed by Blaser is contained in:

Plaintiff's Exhibit 4 (admitted): This is the vendor's lien which reflects an unpaid, unsecured balance due on this transaction in the amount of $18,000.

Plaintiff's Exhibit 5 (admitted): This is Blaser's creditor's claim filed in the estate of Harvey Cameron in the amount of $19,600.

Plaintiff's Exhibit 11 (admitted): Letter dated June 1, 1976, from Blaser to the Camerons notifying them that he was filing a vendor's lien and informing them that they owed him a balance of $22,000.

### Unjust Enrichment

Blaser argues that the district court erred by concluding that the Camerons were not unjustly enriched. We disagree.

■ Generally, a party cannot recover under the equitable theory of unjust enrichment where there is an enforceable express contract covering the same subject matter. *Marshall v. Bare*, 107 Idaho 201, 205, 687 P.2d 591, 595 (Ct.App.1984). However,

> [t]he existence of an express agreement does not in and of itself signify that an action for unjust enrichment cannot be brought. Rather, only when the express agreement is found to be enforceable is a court precluded from applying the equitable doctrine of unjust enrichment in contravention of the express contract. *Chandler v. Washington Toll Bridge Authority*, 17 Wash.2d 591, 137 P.2d 97 (1943); *see* [*Hixon v. Allphin*, 76 Idaho 327, 281 P.2d 1042 (1955)].

*Wolford v. Tankersley*, 107 Idaho 1062, 1064, 695 P.2d 1201, 1203 (1985).

■ The proper measure of recovery on an unjust enrichment claim is not the actual amount of the enrichment, but the amount of enrichment which, as between the two parties, it would be unjust for one party to retain. *Beco Constr. Co., Inc. v. Bannock Paving Co., Inc.*, 118 Idaho 463, 466, 797 P.2d 863, 866 (1990) (citing *Hixon v. Allphin*, 76 Idaho 327, 281 P.2d 1042 (1955)). Blaser had the burden of proving that the Camerons received a benefit and of proving the amount of the benefit which the Camerons unjustly retained. *Gillette v. Storm Circle Ranch*, 101 Idaho 663, 667, 619 P.2d 1116, 1120 (1980); *Hartwell Corp. v. Smith*, 107 Idaho 134, 139–40, 686 P.2d 79, 84–5 (Ct.App.1984). Damages need not be proven with mathematical precision, but the value of any benefit unjustly received must be proven to a reasonable certainty. *Gillette*, 101 Idaho at 667, 619 P.2d at 1120.

■ Blaser presented evidence as to the value of the services he performed for the Camerons.[4] The value of services rendered can be used as evidence of the value of the benefit bestowed under the theory of unjust enrichment, *Hartwell Corp.*, 107 Idaho at 141, 686 P.2d at 86, but Blaser also had to prove the amount of the benefit which, if retained by the Camerons, would result in their unjust enrichment. Mere proof of Blaser's costs was inadequate to establish the value of any benefit the Camerons may have unjustly retained. *Gillette*, 101 Idaho at 667, 619 P.2d at 1120.

■ The amount of recovery to which a party is entitled in an unjust enrichment action is a question of fact. *Anderson v. Schwegel*, 118 Idaho 362, 365, 796 P.2d 1035, 1038 (Ct.App.1990); *Nelson v. Gish*, 103 Idaho 57, 59, 644 P.2d 980, 982 (Ct.App.1982). The district court found that the evidence submitted to it by both parties regarding reasonable value of their services was not credible. Where, as here, there exists sufficient evidence in the record to support the lower court's finding on credibility, this Court, sitting without the firsthand observation necessary to evaluate witness credibility, will not set aside such a finding. *Wolford v. Tankersley*, 107 Idaho at 1065, 695 P.2d at 1204. In light of the trial court's special opportunity to assess and weigh the credibility of the witnesses, we conclude that there was substantial, although conflicting, evidence to support the district court's finding that Blaser was not entitled to damages on the theory of unjust enrichment.

### Failure to Make Findings

■ Blaser contends that the district court erred by not making findings of fact as to the reasonable value of the work performed by Blaser. He argues that the failure of a trial court to make findings upon each and every material issue arising from the pleadings upon which proof is offered necessitates remand by this Court for additional findings, unless such findings would not affect the judgment entered. *Pope v. Intermountain Gas Co.*, 103 Idaho 217, 225, 646 P.2d 988, 996 (1982); *In re Lewis*, 97 Idaho 299, 302, 543 P.2d 852, 855 (1975); *Perry Plumbing Co.*

---

4. The reasonable value of services rendered is the measure of damages under another equitable theory, that of *quantum meruit*. *Hartwell Corp.*, 107 Idaho at 141, 686 P.2d at 86.

*v. Schuler,* 96 Idaho 494, 497, 531 P.2d 584, 587 (1975). We agree, but hold that the district court did not err: the lack of findings of fact as to the reasonable value of Blaser's work did not affect the judgment entered, because the district court properly denied the claim for unjust enrichment.

### *Attorney Fees on Appeal*

▆▆▆▆▆▆ Both parties request attorney fees on appeal pursuant to I.C. § 12–121. We will make such an award to the prevailing party on appeal only if we are left with the abiding belief that the appeal was brought or pursued frivolously, unreasonably, or without foundation. *Minich v. Gem State Developers, Inc.,* 99 Idaho 911, 918, 591 P.2d 1078, 1085 (1979). Blaser is not entitled to fees because he has not prevailed. Moreover, in this appeal, Blaser has invited us to do no more than second-guess the trial court on conflicting evidence. In addition, the law in this area is well-settled, and Blaser has made no substantial showing that the district court misapplied the law. Under these circumstances, the respondents are entitled to an award of attorney fees on appeal. *Johnson v. Edwards,* 113 Idaho 660, 662, 747 P.2d 69, 71 (1987); *Davis v. Gage,* 109 Idaho 1029, 1031, 712 P.2d 730, 732 (Ct. App.1985).

### *Conclusion*

The order of the district court dismissing Blaser's complaint is affirmed. Costs and fees to respondents in an amount to be determined pursuant to Idaho Appellate Rules 40 and 41.

SWANSTROM, J., and HURLBUTT, J., pro tem., concur.