IN THE COURT OF CRIMINAL APPEALS

OF TEXAS





NO. AP-75, 121






JUSTEN GRANT HALL, Appellant


v.


THE STATE OF TEXAS





ON DIRECT APPEAL

FROM EL PASO COUNTY






Keller, P.J., delivered the unanimous opinion of the Court.


O P I N I O N



 Appellant was convicted in February 2005 of capital murder. (1) Pursuant to the jury's answers to
the special issues set forth in Texas Code of Criminal Procedure art. 37.071 §§2(b) and 2(e), the trial judge
sentenced appellant to death. (2) On direct appeal to this Court, appellant raises sixteen points of error. 
Finding no reversible error, we shall affirm.

I. SUFFICIENCY OF THE EVIDENCE

A. Background

 Viewed in the light most favorable to the jury's verdict, the evidence at trial shows the following. 
The victim (Melanie Billhartz) and Ted Murgatroyd were good friends. Murgatroyd and appellant were
acquainted through mutual friends and because they "[hung] around the same crowd," primarily at a drug
house in El Paso. On October 28, 2002, at roughly 4:00 p.m., Murgatroyd encountered Billhartz when
she pulled up in front of the drug house. Murgatroyd asked Billhartz to take him to a convenience store,
and she let him drive, with her as a passenger. On the way back from the store, Murgatroyd made a
sarcastic comment, and Billhartz "flipped out" and started hitting him and screaming at him to get out of her
truck. Murgatroyd stopped the truck, and as he was attempting to leave the vehicle, Billhartz hit him in the
face and jumped on him. As he put his hand up, he struck her on the lip. Billhartz then drove to the house,
with Murgatroyd following on foot. When he reached the house, Billhartz was sitting in her truck, parked
in front of the house.

 Murgatroyd's associates, including appellant, who believed that Murgatroyd had attacked Billhartz,
came out to talk to him. While Billhartz remained in the truck, they discussed the situation. The dilemma
that this group faced was that Billhartz wanted to call the police and report an assault by Murgatroyd. But
when the police were mentioned, appellant stated his disapproval of this possibility and his intention to kill
the victim. According to Murgatroyd, Billhartz was killed to prevent the discovery of the drug house. 
Murgatroyd did not see appellant again until three to five hours later, when appellant pulled up to the drug
house in Billhartz's truck, with her body in the back of the cab. Chase Hale testified that after appellant
returned with Billhartz's truck, appellant told Hale to stay away from it because appellant had just killed
Billhartz. Appellant then ordered Murgatroyd to pick up a shovel and machete in order to go bury the
victim. After driving to New Mexico, appellant ordered Murgatroyd to cut off the victim's fingers to
prevent any DNA from being found under her fingernails. Appellant then dumped the body in New
Mexico, although Murgatroyd was under the impression that appellant took the victim's fingers with him. 
Later, upon questioning by detectives, Murgatroyd led the authorities to the victim's body and gave them
a written statement concerning the preceding events.

 Appellant was apprehended on November 23, 2002, following a routine safety check by Deputy
Tommy Baker of the Hale County Sheriff's Office. During the safety check, a license plate check resulted
in a "missing or endangered" person report on the victim. Further investigation resulted in a search of the
vehicle. While the investigation was being conducted, Baker received a report that the victim's body had
been found and that the occupants of the truck were suspects. The occupants were arrested for
unauthorized use of a motor vehicle, and appellant was later indicted for Billhartz's murder.

 Dr. Patricia McFeeley, pathologist and assistant chief Medical Examiner, supervised the autopsy
of the victim. A power cord was wrapped around the victim's neck three times and tied tightly. Her nasal
bones were fractured, and she had multiple fractures of the lower jaw bone, fractures in her right hand, a
fractured rib, and fingers missing from her right hand. After appellant was arrested for the victim's murder,
he confessed to the offense to Detective David Samaniego of the El Paso Police Department.

B. Analysis

 In points of error one and two, appellant contends that the evidence is legally and factually
insufficient to support a verdict of guilty of capital murder based on obstruction or retaliation. In a legal
sufficiency review, we view all the evidence in the light most favorable to the verdict and determine whether
a rational fact-finder could have found the elements of the crime beyond a reasonable doubt. (3) Under a
factual sufficiency review, we examine the evidence with two questions in mind. (4) First, we ask whether the
evidence is so weak that the jury's verdict seems clearly wrong and unjust. (5) Second, we ask whether, even
considering conflicting evidence, the jury's verdict is against the great weight and preponderance of the
evidence. (6) We find appellant's claims of legal and factual insufficiency to be meritless.

 Appellant claims that, in order to prove guilt in this case, the evidence must show that appellant
killed the victim knowing that she intended to either report the assault or report the existence of the
methamphetamine lab at the house. He contends that, instead the evidence here supports only a conclusion
that the discovery of the methamphetamine lab would have been a collateral consequence of the victim's
report. Appellant reasons that since he did not care about the victim reporting the assault, but rather was
concerned with a collateral consequence of that report, he murdered the victim to prevent an inadvertent
drawing of the police to the methamphetamine lab. As support, he cites the prosecution's theory of the
case, which included the argument that appellant murdered the victim to keep the police from coming to
the house and finding methamphetamine on the premises. Therefore, according to appellant, the victim was
not killed for the specific purpose of preventing her from calling the police and reporting an assault.

 A person commits capital murder if he intentionally commits murder in the course of committing or
attempting to commit the offense of obstruction. (7) A person commits the offense of obstruction if he
intentionally or knowingly "harms ... another by an unlawful act to prevent or delay the service of another
as a person who ... the actor knows intends to report the occurrence of a crime." (8) When determining the
meaning of a statute, we begin with its plain language unless that language leads to absurd results. (9) A plain
reading of the statute indicates that the State must prove that appellant intended to obstruct or prevent the
victim from reporting a crime. Nothing in the statute requires an intent to prevent the reporting of a specific
crime. Appellant's own reasons for committing obstruction, and in this case capital murder by way of
obstruction, are relevant to show motive, but they are not an element of the offense.

 Viewed in the light most favorable to the verdict, the evidence is legally sufficient. The evidence
shows that appellant left the house with the victim. Upon his return, he admitted to Murgatroyd that he had
murdered her, and he enlisted aid in disposing of her body. Appellant confessed to El Paso detectives that
he murdered the victim, and he signed a statement to that effect. Point of error one is overruled.

 In reviewing the evidence for factual sufficiency, we do not substitute our judgment for that of the
fact-finder. (10) Viewing the evidence in a neutral light, we conclude that the evidence is factually sufficient
to sustain appellant's conviction for capital murder. Point of error two is overruled.

II. MOTION TO SUPPRESS EVIDENCE

 In points of error three and four, appellant claims that the trial court erred in denying his motion to
suppress the evidence seized as a result of the vehicle stop conducted by Deputy Baker. Point three alleges
a violation of the United States Constitution, specifically the Fourth Amendment, while point four raises a
state law claim. 

 On the night of appellant's arrest, Deputy Baker came upon Billhartz's truck while it was parked
on the highway near Plainview. Deputy Baker approached the truck to check on the welfare of the
occupants because the vehicle was parked with its back wheels still on the highway. He advised the
occupants, including appellant, of a safer place to rest, and he sent them on their way without asking for
identification. As appellant drove off, Deputy Baker's dispatcher informed him that the license check on
the truck showed that the owner had been reported as missing. Deputy Baker then activated his lights and
stopped the vehicle to investigate. During this investigation, he received a report from his dispatcher that
the owner of the truck was the victim of a homicide. Deputy Baker was told to seize the truck in
connection with a murder investigation. He was also informed that appellant and the other occupants of
the vehicle were suspects in the homicide. Deputy Baker then placed appellant under arrest for
unauthorized use of a motor vehicle. A capital murder arrest warrant for appellant was later obtained by
El Paso police.

 Appellant contends that Deputy Baker's second encounter with appellant, which resulted in his
arrest, was not justified under either Texas law or the Fourth Amendment. He argues that the second stop
was not supported by specific, articulable facts which, taken together with rational inferences from those
facts, led the officer to conclude that the person detained was, had been, or soon would be engaged in
criminal activity. (11) According to appellant, after the safety check there were no circumstances that
evidenced a possible violation of the law. We disagree.

 When evaluating whether there is sufficient reasonable suspicion to make a second stop and
investigate the circumstances, and later, sufficient probable cause to arrest appellant, it is proper for us to
consider all information available to the investigating officer at the time of the stop, be it from his
observations or from information relayed to him by other law enforcement personnel. (12) At the time of the
stop, Deputy Baker knew that the owner of the vehicle, a female, had been reported missing and that her
vehicle was presently being driven by a man. These facts alone are sufficient to warrant an investigative
stop. Points of error three and four are overruled.

III. VOLUNTARINESS OF CONFESSION

 In points of error five and six, appellant complains that the trial court erred in denying his motion
to suppress his confession. Point five raises a claim based on Article 38.21 of the Texas Code of Criminal
Procedure, and point six raises a claim based on the Fifth and Fourteenth Amendments of the United States
Constitution.

 On November 25, 2002, appellant signed a statement confessing to the murder. Appellant claims
that the confession was improperly obtained because it was not "freely and voluntarily made without
compulsion or persuasion." (13) In support of this assertion, appellant points to evidence that he was under
a suicide watch, that he was exhibiting psychotic behavior, that El Paso detectives were aware of his suicide
attempts, that he requested his medication for his depression and nothing happened, and that he had not
slept for six to seven days prior to the arrest. Citing article 38.21 and the preceding matters, appellant
alleges that he was not in the right frame of mind to give a voluntary confession and, therefore, his
confession should have been excluded. (14)

 A statement is considered to be voluntary unless there was such "official, coercive conduct" that
"any statement obtained thereby was unlikely to have been the product of an essentially free and
unconstrained choice by its maker." (15) Here, we see nothing in the record, or in anything appellant alleges,
that demonstrates such action or coercion. According to Detective Pantoja of the El Paso Police
Department, when he met with appellant, appellant was advised of his rights, waived his rights, and never
requested the presence of his attorney. Further, Pantoja testified that while appellant mentioned that he was
taking medication, he never requested the medication. Pantoja also testified that appellant was coherent
during the conversation, seemed to understand what he was saying, and was not emotional or distraught. 
Likewise, Detective Samaniego of the El Paso Police Department testified that appellant was coherent and
stable when he spoke with the detective and when he signed the confession. Appellant himself testified that
he did not take his prescribed medications because he was "paranoid of the deputies" that were assigned
to his jail. 

 In reviewing a trial court's ruling on a motion to suppress, an appellate court views the evidence
in the light most favorable to the trial court's ruling. (16) As the sole judge of the credibility of the evidence
and witnesses, the trial court had the discretion to believe or disbelieve appellant's allegations that he was
unable to voluntarily make a written confession. It also had the discretion to believe or disbelieve the
officers' testimony that appellant was coherent and able to make a full and voluntary confession.

 Moreover, appellant's conscious choice not to take his medications further demonstrates that his
confession was not coerced or involuntary. Even considering all of appellant's allegations in the best light
possible, the confession would still not be considered coerced or involuntary, as there was no evidence of
overreaching by law enforcement. Absent any such overreaching, conditions such as those claimed by
appellant do not render the confession coerced or involuntary. (17) Points of error five and six are overruled.

III. VOIR DIRE

 In point of error seven, appellant claims that the trial court improperly limited the time he had to
question venire member Gloria Lopez. During voir dire, venire members were questioned separately. Each
member was questioned by both the defense and the prosecution for a maximum of forty-five minutes each. 
In Lopez's case, the defense was granted an additional fifteen minutes for extra questioning. (18) Another
request for five extra minutes by appellant was denied. Appellant claims that the limitation of voir dire,
along with the refusal to extend the time for Lopez, prevented him from asking additional questions
regarding the burden of proof and Lopez's possible bias towards law enforcement.

 The trial court may impose reasonable limits on the time spent questioning venire members. (19) The
standard for review of such time limitations is abuse of discretion. (20)

 We hold that the trial court did not abuse its discretion by denying appellant's request for additional
time. Appellant had already received an additional fifteen minutes, along with the original forty-five, to
question Lopez. Furthermore, the record demonstrates that the subjects appellant claims he was prevented
from exploring further with additional questions - the burden of proof and Lopez's perceived bias against
law enforcement - were addressed during voir dire by appellant. Based on the foregoing, we hold that the
totality of the voir dire establishes that the trial judge did not err in refusing appellant's request for more time
in examining Lopez. Point of error seven is overruled.

IV. CHALLENGES FOR CAUSE

 In points of error eight, nine, and ten, appellant claims trial error in the denial of his challenges for
cause of three venire members. Appellant exhausted all his preemptory challenges, requested more
challenges that were denied, and identified objectionable persons on the jury. (21) In all three instances,
appellant claims that the venire member was biased in favor of law enforcement.

 A trial court's decision to deny a challenge for cause will not be overturned absent an abuse of
discretion by the trial court. (22) 

 The voir dire of venire member Griffith shows that, during a witness-credibility discussion, he
admitted that he might be biased towards a police officer rather than a gang member if he knew who they
were beforehand. However, he also stated that he would evaluate the credibility of witnesses based upon
what they said, not who they were, and that he would not automatically believe a witness simply because
he was a police officer. To be challengeable for cause based on his views about a specific type of witness,
a venire member must hold extreme positions with respect to that witness's testimony. (23) With respect to
venire member Sudimack, nothing in the record demonstrates any bias in favor of law enforcement. In fact,
Sudimack said that law enforcement agents, specifically the FBI, "probably" lie, since they are people too. 
With respect to venire member Lopez, nothing in the record shows a bias in favor of law enforcement, and
appellant has not pointed to any such bias in the record. The trial court did not abuse its discretion in
denying appellant's challenges for cause. Points of error eight, nine, and ten are overruled.

V. MOTION FOR CONTINUANCE

 In point of error eleven, appellant argues that the trial court erred when it denied his motion for
continuance. Appellant alleged that the State failed to timely disclose evidence meeting the materiality
standard of Brady v. Maryland, (24) namely "newly revealed claims of problems with the DNA laboratory
work" as well as new claims that Billhartz's family was involved with criminal gangs. 

 In order to establish that the trial court abused its discretion in refusing the continuance, an
appellant must show specific prejudice to his defense. (25) With respect to the DNA claims, appellant
provides no reference to what DNA tests were questionable. Neither does he show that the State failed
to disclose DNA evidence, that DNA evidence was favorable to the defense, or that DNA evidence was
material. (26) The only claim appellant makes regarding the relevance of the DNA evidence is a statement
that the evidence contained a third person's unidentified DNA. But this fact, even if true, is not material
because there was no issue of whether appellant had been in the victim's truck, and there is no evidence
regarding where the unidentified DNA was deposited. 

 Regarding appellant's claim that the family of the deceased was involved with criminal gangs,
appellant again fails to show any evidence supporting this allegation, and he provides no authority or
argument as to how this alleged evidence was material, much less as to how the lack of a continuance
stopped him from investigating these claims. (27) Point of error eleven is overruled.

VI. DNA EVIDENCE

 In point of error twelve, appellant alleges that the trial court erred when it admitted DNA evidence
at trial. During the investigation, DNA tests were done on stains on the carpet and the interior of Billhartz's
truck. They tested positive for "presumptive blood." The expert who tested the DNA stated that it was
a mixture of appellant's, Murgatroyd's and the victim's DNA, with appellant's being stronger than
Murgatroyd's. Appellant now argues that the DNA evidence should have been excluded because there
were alleged irregularities in the testing, and the defense had no opportunity to test the DNA evidence. 
According to appellant, there was no time to address either of these two concerns because the State did
not turn over the DNA evidence to him until the day before trial. He claims that the State's failure to turn
over the material more promptly effectively rendered the information useless, and that, absent a
continuance, the proper remedy was exclusion of the evidence. 

 Appellant relies upon our decision in State v. LaRue. (28) However, in LaRue, we held that exclusion
of evidence was proper when the failure to turn over evidence was "willful" and not merely reckless or
negligent. (29) There is nothing in the record showing a willful failure to disclose. Therefore, we find that the
trial court's admission of the DNA evidence was within its discretion. Point of error twelve is overruled.

VII. LESSER INCLUDED OFFENSE

 In point of error thirteen, appellant claims that the trial court erred when it denied his request to
charge the jury with the lesser included offense of murder. However, the record demonstrates that
appellant requested that the lesser-included charge of murder be removed, charging appellant solely with
capital murder. The trial court refused this request and included jury instructions on both murder and
capital murder. Because the record demonstrates that the trial court included a jury instruction on murder,
we find his allegation of error to be without merit. Point of error thirteen is overruled.

VIII. DEATH-QUALIFIED JURORS

 In point of error fourteen, appellant argues that the trial court erred when it declined to grant
appellant's motion to empanel two juries, one for guilt and one for punishment. In point of error sixteen,
appellant argues that the trial court erred when it denied appellant's motion to preclude the prosecution
from death-qualifying jurors. 

 In both points, appellant contends that the disqualification of jurors on a punishment phase issue
biases the jury against the defendant, producing a jury more likely to convict. With respect to point of error
sixteen, he also claims that disqualification of jurors on a punishment phase issue denies the appellant a fair
cross-section of society on guilt. The claim that disqualification of jurors on a punishment issue biases the
jury with regard to guilt has been rejected by the United States Supreme Court (30) and by this Court. (31) 
Appellant has presented nothing to distinguish his case from those decisions. Likewise, the idea that the
disqualification of jurors on a punishment phase issue denies the appellant a fair cross-section of society
when deciding guilt has also been decided adversely to his position. (32) Points of error fourteen and sixteen
are overruled.

IX. APPLICATION OF REASONABLE DOUBT TO MITIGATION

 In point of error fifteen, appellant alleges that the trial court's failure to assign a burden of proof to
mitigating evidence, and the resulting failure to inform the jury that it is balancing the mitigating evidence with
the aggravating evidence, renders the judgment unconstitutional under the Eighth Amendment. Although
we have ruled against this argument many times in the past, (33) appellant relies upon State v. Marsh, a case
from the Kansas Supreme Court. (34) 

 In Kansas, a death sentence is required if the jury finds that aggravating circumstances are not
outweighed by mitigating circumstances; if the opposing circumstances are deemed to be equal, the tie is
to go to the state. (35) The Kansas Supreme Court found this arrangement to be unconstitutional under the
Eighth and Fourteenth Amendments. (36) According to appellant, Texas's death penalty statute "suffers from
the same problem" as the Kansas statute. However, subsequent to appellant's brief in the present case,
the Kansas decision was reversed by the United States Supreme Court, and Kansas's death penalty statute
was found to be constitutional. (37) Point of error fifteen is overruled.

 The judgment of the trial court is affirmed. 


DELIVERED: June 27, 2007

DO NOT PUBLISH
1. Tex. Penal Code §19.03(a).
2. Article 37.071 §2(g). Unless otherwise indicated, all future references to Articles refer to the
Code of Criminal Procedure.
3. Jackson v. Virginia, 443 U.S. 307, 319 (1979).
4. Watson v. State, 204 S.W.3d 404, 414-415 (Tex.Crim.App. 2006).
5. Id.
6. Id.
7. Tex. Penal Code §19.03(a)(2).
8. Tex. Penal Code §36.06(A)(2)(b).
9. Getts v. State, 155 S.W.3d 153, 155 (Tex.Crim.App. 2005).
10. Vodochodsky v. State, 158 S.W.3d 502, 510 (Tex.Crim.App. 2005).
11. See Terry v. Ohio, 392 U.S. 1 , 20-21 (1968).
12. See Jackson v. State, 745 S.W.2d 4, 11-17 (Tex.Crim.App. 1988).
13. See Tex. Code Crim. Proc. §38.21.
14. See Green v. State, 934 S.W.2d 92, 98-100 (Tex.Crim.App. 1996).
15. Alvarado v. State, 912 S.W.2d 199, 211 (Tex.Crim.App. 1995).
16. State v. Kelly, 204 S.W.3d 808, 818 (Tex.Crim.App. 2006).
17. See Colorado v. Connelly, 479 U.S. 157, 164-65 (1986).
18. Lopez's case was not the only instance of appellant requesting, and being given, extra time
to question a venire member.
19. Cantu v. State, 842 S.W.2d 667, 687 (Tex.Crim.App. 1992).
20. Id.
21. See Sanchez v. State, 165 S.W.3d 707, 712-13 (Tex.Crim.App. 2005).
22. See Burks v. State, 876 S.W.2d 877, 893 (Tex.Crim.App. 1994).
23. See Jones v. State, 982 S.W.2d 386, 390 (Tex.Crim.App. 1988).
24. Brady v. Maryland, 373 U.S. 83 (1963).
25. Renteria v. State, 206 S.W.3d 689 (Tex.Crim.App. 2006).
26. Little v. State, 991 S.W.2d 864, 866 (Tex.Crim.App. 1999).
27. This claim was not made in appellant's original motion for a continuance.
28. 152 S.W.3d 95 (Tex.Crim.App. 2004).
29. Id. at 96-98.
30. Uttecht v. Brown, 127 S. Ct. 2218, 2233 (2007); Bumper v. North Carolina, 391 U.S.
543, 545 (1968).
31. See Canales v. State, 98 S.W.3d 690 (Tex.Crim.App. 2003); Granviel v. State, 552
S.W.2d 107 (Tex.Crim.App. 1976).
32. Lockhart v. McCree, 476 U.S. 162 (U.S. 1986).
33. See Hankins v. State, 132 S.W.3d 380, 386 (Tex.Crim.App. 2004); Valle v. State, 109
S.W.3d 500, 504 (Tex.Crim.App. 2003); Ladd v. State, 3 S.W.3d 547, 558-559 (Tex.Crim.App.
1999).
34. 103 P.3d 445 (Kan. 2004).
35. Id.
36. Id.
37. Kansas v. Marsh,126 S.Ct. 2516 (2006).