**In re DBSI, INC., et al., Debtors.**

**James R. Zazzali, as Trustee for the Debtors' Jointly–Administered Chapter 11 Estates and/or as Litigation Trustee for the DBSI Estate Litigation Trust, Plaintiff,**

**v.**

**AFA Financial Group, LLC, et al., Defendants.**

**Bankruptcy No. 08–12687 (PJW).**
**Adversary No. 10–54524 (PJW).**

United States Bankruptcy Court, D. Delaware.

Aug. 27, 2012.

---

Christopher Viceconte, Natasha M. Songonuga, William R. Firth, III, Gibbons P.C., Wilmington, DE, Dale E. Barney, Mark B. Conlan, Gibbons P.C., Newark, NJ, for Plaintiff.

AFA Financial Group, LLC, pro se.

Francis A. Monaco Jr., Womble Carlyle Sandridge & Rice, William F. Taylor, Jr., McCarter & English LLP, Thomas F. Driscoll, III, Bifferato LLC, Regina M. Matozzo, Ferry, Joseph & Pearce, P.A., Artemio C. Aranilla, Marshall Dennehey Warner Coleman & Gog, Lucian Borders Murley, Saul Ewing LLP, Garvan F. McDaniel, Bifferato Gentilotti LLC, Theodore J. Tacconelli, Ferry, Joseph & Pearce, P.A., Katharine L. Mayer, McCarter & English, LLP, Jeffrey R. Waxman,

Morris James LLP, Michael J. Farnan, Saul Ewing LLP, Wilmington, DE, Cliff G. Anderson, Michaels, Ward & Rabinovitz, LLP, Boston, MA, Derek C. Anderson, Michaels, Ward & Rabinovitz, LLP, Boulder, CO, Denis C. Dice, Esq., Marshall Dennehey Warner Coleman Goggin, Joel M. Wertman, James A. McGovern, Marshall, Dennehey, Warner, Coleman, Philadelphia, PA, Alan M. Wolper, Locke Lord Bissell & Liddell LLP, David A. Baugh, Baugh, Dalton, Carlson & Ryan, LLC, Erin M. Korrison, Helen Din, Locke Lord Bissell & Liddell LLP, Chicago, IL, Gregg Breitbart, Kaufman Dolowich Voluck & Gonzo LLP, Boca Raton, FL, Jennie L. Clegg, David C. Johnson, George J. Marcus, Marcus Clegg & Mistretta, P.A., Portland, ME, Mark F. Raymond, Michael A. Shafir, Braod and Cassel, Miami, FL, Carla B. Minckley, Birge & Minckley, P.C., Centennial, CO, for Defendants.

## MEMORANDUM OPINION

PETER J. WALSH, Bankruptcy Judge.

This opinion concerns the motion to dismiss this adversary proceeding ("the Motion") filed by certain defendants (the "Movants").[1] (Doc. # 123.) For the reasons described below, I will deny the Motion in part and grant it in part.

### Background

This adversary proceeding arose in the chapter 11 bankruptcy cases of DBSI, Inc. ("DBSI") and numerous of its affiliates (collectively, "Debtors"), filed in November 2008. DBSI Securities Corporation ("DBSI Securities"), a DBSI affiliate, filed on November 10, 2008. The history of the DBSI bankruptcy cases has been extensively chronicled in prior decisions from this Court[2], so only a brief summary of

---

**1.** Movants are listed on Exhibit I to the Motion. (Doc. # 123.)

**2.** *See, e.g., Zazzali v. 1031 Exchange Grp., LLC,* 467 B.R. 767, 769–70 (Bankr.D.Del.2012).

the facts relating to this adversary will be provided here.

This action was commenced by James R. Zazzali, Litigation Trustee for the DBSI Estate Litigation Trust ("Trustee") on November 4, 2010. (Doc. # 1.) The complaint (the "Complaint") asserts causes of action for the avoidance and recovery of actually fraudulent, preferential, and post-petition transfers pursuant to 11 U.S.C. §§ 544, 547, 548, 549, 550, 551, and applicable state[3] fraudulent transfer law; unjust enrichment; and disallowance of claims pursuant to 11 U.S.C. § 502(d). Over 100 broker-dealer defendants are named in the action. The identities and residences of the defendants are listed on Exhibit A to the Complaint. Exhibit B lists numerous transfers (the "Transfers") made by DBSI Securities to the defendants, and includes the amount, date, and check number for each Transfer.

Movants filed this Motion to dismiss the Complaint in its entirety for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6). After briefing from the parties, this matter is ripe for decision.

## Jurisdiction

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding involves core matters under § 157(b)(2)(B), (F), (H), and (0).

## Standard of Review

In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Under the pleading requirements imposed by Fed. R.Civ.P. 8(a)[4], the plaintiff must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. Rather, "factual allegations must be enough to raise a right to relief above the speculative level." *Id. See also Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir.2009) ("To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible. This then 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'") (quoting *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937). The court will "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 233 (3d Cir.2008).

## Discussion

*Count One: Avoidance of Actually Fraudulent Transfers under 11 U.S.C. § 548(a)(1)(A), 550, and 551*

A trustee may avoid a transfer "made with actual intent to hinder, delay or defraud" creditors, provided that the transfer was made within two years before the petition date. 11 U.S.C.

---

**3.** Trustee has asserted claims under Idaho Code §§ 55–906, 55–913, 55–916, and 55–917.

**4.** Rule 8(a) provides that a complaint "must contain: (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief."

§ 548(a)(1)(A). Actions to avoid actually fraudulent transfers under § 548(a)(1)(A) are subject to the Fed.R.Civ.P. 9(b) heightened standard of pleading. *Official Comm. of Unsecured Creditors of Fedders N. Am. v. Goldman Sachs Credit Partners (In re Fedders N. Am., Inc.)*, 405 B.R. 527, 544 (Bankr.D.Del.2009). Rule 9(b) requires a plaintiff bringing a cause of action for fraud to "state with particularity the circumstances constituting fraud or mistake." This standard is relaxed where the plaintiff is a trustee in bankruptcy, because "of the trustee's 'inevitable lack of knowledge concerning acts of fraud previously committed against the debtor, a third party.' " *Id.* (citing *Schwartz v. Kursman (In re Harry Levin, Inc. t/a Levin's Furniture)*, 175 B.R. 560, 567 (Bankr. E.D.Pa.1994)). Nonetheless, even under the more relaxed Rule 8(a) standard, the plaintiff must provide more than mere legal conclusions and cannot simply repeat the elements of the cause of action. *Mervyn's LLC v. Lubert–Adler Grp. IV (In re Mervyn's Holdings, Inc.)*, 426 B.R. 488, 494 (Bankr.D.Del.2010) (citing *Twombly*, 127 S.Ct. at 1964–65).

 Because of the difficulty in proving actual fraudulent intent, the court can infer the necessary intent from the circumstances of the case, particularly the presence or absence of "badges of fraud." *Fedders*, 405 B.R. at 545. The traditional badges of fraud include (but are not limited to):

(1) the relationship between the debtor and the transferee;

(2) consideration for the conveyance;

(3) insolvency or indebtedness of the debtors;

(4) how much of the debtor's estate was transferred;

5. "TIC" means tenant-in-common.

(5) reservation of benefits, control or dominion by the debtor over the property transferred; and

(6) secrecy or concealment of the transaction.

*Id.* No single badge of fraud is dispositive, and the court may consider other factors. *Id.*

Trustee pleads that the collective DBSI enterprise was insolvent at the time of the Transfers. Specifically, Trustee makes the following allegations:

- "Marketing, transactional and organizational costs in the TIC[5] syndication business prevented [DBSI] from generating sufficient profit to support the DBSI enterprise. At some point in or after 2004, the DBSI enterprise took on the characteristics of a Ponzi scheme, in which the guaranteed returns to the old investors could only be satisfied by the flow of funds from the new investors." (Compl.¶ 20.)

- "During the four-year period preceding the [p]etition [d]ate (the 'Four Year Period'), the Debtors were facing severe cash shortages and were largely dependent on new investor money to provide cash for operations and to fund payments to prior investors." (Id.¶ 21.)

- DBSI commingled funds among the various entities and routinely transferred cash from one entity to another without regard for the original source of the funds. (*Id.* ¶¶ 22–24.)

- "By late 2006, cash shortages were such an acute problem that management was consumed by the machinations of managing and obtaining cash. From early 2005, management met frequently to address cash-flow needs." (Id.¶ 42.)

- "[D]espite massive flows of cash in and out of [the DBSI enterprise's] accounts, a snapshot on any given day would show either a very meager cash balance or a collective deficit." (Id. ¶ 43.)

This Court has previously found that, because the DBSI cases have been substantively consolidated, Trustee need not allege that the particular transferor entity (here, DBSI Securities Corporation) was insolvent. *Zazzali v. Mott (In re DBSI, Inc.)*, 447 B.R. 243, 248 (Bankr.D.Del. 2011). As a result, the allegations regarding the insolvency of the DBSI enterprise as a whole are sufficient. From Trustee's assertions listed above, it is plausible that Debtors, including DBSI Securities, were unable to pay their debts as they came due.

Insolvency is the only traditional badge of fraud that Trustee includes in his pleading. But the list of badges of fraud is not exclusive, and so the Court may consider other factors. Here, Trustee raises a number of allegations regarding Debtors' financial condition and their attempts to obscure the true status of their balance sheets. In particular, Trustee alleges that Debtors, including DBSI Securities Corporation, were part of a Ponzi scheme. Trustee alleges that the DBSI enterprise as a whole "took on the characteristics of a Ponzi scheme" around 2004. (Compl.¶ 20.) The scheme was propped up by the sale of TIC interests through both a securities channel and a real estate channel. (*Id.* ¶ 16.) Of the securities channel sales, Trustee alleges:

DBSI Securities Corporation ("DBSI Securities"), a registered broker-dealer and affiliate of DBSI, marketed and sold the TIC investments on a wholesale basis to various broker-dealers around the United States. The broker-dealers would, in turn, sell the TIC interests to the investing public and receive a commission on those sales.

(Id.) The TIC sales, along with the sale of note, bond, and fund investments, generated the cash flow necessary to keep up the illusion of high returns:

By generating a continuing influx of cash from new investors through serial bond, note and fund offerings and sales of TIC investments in TIC Properties, the Debtors were able to create and promote the false impression of financial strength and make consistent payments to investors, notwithstanding that the Debtors' [sic] were insolvent at the time.

(Id.¶ 20.) Further, the TIC interests were sold "at substantial mark-ups over the price at which [a DBSI-related special purpose entity] had acquired the TIC Property, yet no value had been added to justify the mark-up." (*Id.* ¶ 25.)

In 2005, "DBSI began to designate a portion of the proceeds received from TIC investors as 'Accountable Reserves,'" which were supposed to be set aside for capital improvements and other expenses related to the TIC Properties purchased. (*Id.* ¶ 27.) These Accountable Reserve funds "were freely commingled with other DBSI funds and used by DBSI and other DBSI entities for general corporate and non-TIC related purposes." (*Id.* ¶ 29.)

Trustee argues that the foregoing allegations establish that DBSI Securities was an integral part of a widespread Ponzi scheme, and that as a result, the Transfers were made with actual intent to defraud. To reach this conclusion, Trustee relies on the "Ponzi presumption," which posits that "all payments made by a debtor in furtherance of a Ponzi scheme are made with actual fraudulent intent." *Cuthill v. Greenmark, LLC (In re World Vision Entm't, Inc.)*, 275 B.R. 641, 658 (Bankr.M.D.Fla. 2002). This Court has previously recognized and applied the presumption in these

DBSI cases. *See, e.g. Zazzali v. 1031 Exch. Grp. (In re DBSI Inc.)*, 478 B.R. 192, 2012 WL 3306995 (Bankr.D.Del. Aug. 14, 2012); *Zazzali v. Swenson (In re DBSI, Inc.)*, Adv. No. 10–54649 (PJW), 2011 WL 1810632, at *4 (Bankr.D.Del. May 5, 2011).

◼ Yet the presumption does not relieve Trustee of the burden to show that the Transfers at issue were made "in furtherance of" the Ponzi scheme. *See, e.g., Bear Stearns Secs. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*, 397 B.R. 1, 11 (S.D.N.Y.2007) (noting that the court must determine "whether the transfers at issue were related to a Ponzi scheme" before it can apply the Ponzi presumption); *In re Pearlman*, 440 B.R. 569, 575 (Bankr. M.D.Fla.2010) ("To rely on the Ponzi scheme presumption, the trustee must allege the debtors' loan repayments were somehow in furtherance of either the EISA Program or the TCTS Stock Program Ponzi schemes."). This is because even where the plaintiff has alleged the existence of a broad, fraudulent scheme, "the [c]ourt must focus precisely on the specific transaction or transfer sought to be avoided in order to determine whether that transaction falls within the statutory parameters of [an actually fraudulent transfer]." *Bayou Superfund, LLC v. WAM Long/Short Fund II, LP (In re Bayou Grp., LLC)*, 362 B.R. 624, 638 (Bankr.S.D.N.Y.2007). *See also Manhattan Inv. Fund*, 397 B.R. at 11 (noting that "[c]ertain transfers may be so unrelated to a Ponzi scheme that the presumption should not apply"). In sum, Trustee must plead that Debtors were engaged in a Ponzi scheme and that the transfers at issue were related to or in furtherance of the fraudulent scheme.

Trustee has sufficiently alleged the existence of a Ponzi scheme. Specifically, Trustee alleges that the TIC interests were sold at an inflated price unsupported by the value of the underlying property, and that the proceeds from those sales were used for DBSI's operating expenses, including pay-outs to other investors. (Compl.¶¶ 21, 25–29.) This fits the definition of a Ponzi scheme. *See In re Manhattan Inv. Fund*, 397 B.R. at 8 (stating that a Ponzi scheme exists where "money from new investors is used to pay artificially high returns to earlier investors in order to create an appearance of profitability and attract new investors so as to perpetuate the scheme.")

◼ Since he has adequately pled the existence of a Ponzi scheme, Trustee must plead sufficient facts to show that the Transfers were made "in furtherance of" the Ponzi scheme to use the presumption. Movants argue that Trustee has failed in this regard and rely on *Sharp Int'l Corp. v. State Street Bank & Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43 (2d Cir. 2005), which held that repayment of a loan by a debtor engaged in fraudulent business practices was not a transfer made with actual intent to defraud where there was no allegation that the lender was involved in the fraud. I find the *Sharp* case to be distinguishable, however. In *Sharp*, there was no allegation that the lender was a part of the fraud; in contrast, here Trustee has alleged that Movants were instrumentalities of the DBSI scheme. The scheme depended upon sales of TIC interests to investors, and Movants were the ones who effected those sales. The Transfers were commissions paid to Movants as reward for their selling efforts. Thus, there is a difference between Movants' role in the Ponzi scheme and the role of a lender who simply loaned money to a fraudulent enterprise.

I find two other cases, *Christian Bros. High Sch. Endowment v. Bayou No Leverage Fund, LLC (In re Bayou Grp. LLC)*,

439 B.R. 284 (S.D.N.Y.2010) [herein *"Bayou II"*] and *In re World Vision Entm't, supra,* 275 B.R. 641, to be more instructive. Like Trustee in this case, the trustee in *World Vision* sought to avoid and recover commission fees as actually fraudulent transfers. The debtor ran a Ponzi scheme based on the sale of promissory notes. 275 B.R. at 645. The sales were made by insurance agents acting as brokers, who received a commission in exchange for their efforts. *Id.* at 646. In considering the trustee's avoidance claim, the court held that the transfers were avoidable because they were made in furtherance of the debtor's Ponzi scheme:

> The debtor recruited insurance agents to sell its promissory notes and paid the brokers commissions, such as those received by the Corporate Defendants in this adversary proceeding, to perpetuate the scheme. Without the brokers, the scheme would have collapsed much earlier. The debtor paid the brokers high commissions to induce them to continue the sales and to keep the cash flowing in. Without question, the debtor paid these commissions with the actual intent to defraud both current and future investors.

*Id.* at 657. Factually, this situation is identical to the case at hand. *Bayou II,* while not dealing with commissions, underscores that payments made for the purpose of attracting new investors to the scheme are avoidable as actually fraudulent. In that case, the debtors sought to avoid redemption payments made to certain investors. 439 B.R. at 290. The district court in *Bayou II* upheld the bankruptcy court's ruling that the transfers were made with actual fraud. *Id.* at 304. In the process, the court distinguished *Sharp,* noting that the plaintiff in *Sharp* had failed to allege that the loan repayment at issue "was made to 'hinder, delay or defraud' Sharp's creditors—and instead

focused on 'the [fraudulent] manner in which Sharp obtained new funding.' " *Id.* at 302. In *Bayou II,* in contrast, the debtors had "specifically pled and demonstrated that the redemption payments hindered, delayed, and defrauded Bayou's creditors, by *inter alia,* forestalling disclosure of the fraudulent scheme." *Id.* Here, Trustee has alleged that the TIC sales were one of the few sources of funds that supported the Ponzi scheme: "By generating a continuing influx of cash from new investors through serial bond, note and fund offerings and sales of TIC investments in TIC Properties, the Debtors were able to create and promote the false impression of financial strength and make consistent payments to investors...." (Compl.¶ 20.) Thus, according to Trustee, the TIC sales were an integral part of the DBSI scheme. The Transfers were made to Movants as commissions for the TIC sales. (Compl.¶ 16.) Taking these two allegations together, Trustee has pled that the Transfers were made in furtherance of the Ponzi scheme, as they were made to keep the flow of investor money coming into DBSI.

Because Trustee has sufficiently alleged facts showing that the DBSI enterprise was a Ponzi scheme and that the Transfers were made in furtherance of the scheme, the Ponzi scheme presumption applies to this case. Consequently, I hold that Trustee has stated a cause of action for the avoidance of actually fraudulent transfers under 11 U.S.C. § 548(a)(1)(A).

*Counts Two & Three: Avoidance of Actually Fraudulent Transfers under 11 U.S.C. § 544, and Idaho Code Ann. §§ 55–906, 55–913(1)(a), 55–916, and 55–911*

■ Section 544(b) of the Bankruptcy Code permits the trustee to step into the shoes of an existing unsecured creditor who could have avoided an action under

state law. 11 U.S.C. § 544(b)(1). Trustee here asserts claims against Movants under several Idaho Code sections.

Idaho Code § 55–913(1)(a) provides that a transfer is fraudulent if it is made with the "actual intent to hinder, delay, or defraud any creditor of the debtor." Idaho Code § 55–906 provides that "[e]very transfer of property . . . [made] with intent to delay or defraud any creditor . . . is void against all creditors of the debtor . . . and against any person upon whom the estate of the debtor devolves in trust for the benefit of others than the debtor." For claims under both §§ 55–913(1)(a) and 55–906, the plaintiff must show actual intent to defraud with respect to the transfer at issue, and may do so using badges of fraud. *See Mohar v. McLelland Lumber Co.*, 95 Idaho 38, 501 P.2d 722, 726 (1972). Sections 55–916 and 55–917 provide for the avoidance and recovery, respectively, of such a fraudulent transfer by a creditor.

In determining actual intent to defraud, the court may consider whether:

(a) The transfer or obligation was to an insider;

(b) The debtor retained possession or control of the property transferred after the transfer;

(c) The transfer or obligation was disclosed or concealed;

(d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(e) The transfer was of substantially all the debtor's assets;

(f) The debtor [absconded];

(g) The debtor removed or concealed assets;

(h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(j) The transfer occurred shortly before or shortly after a substantial debt was incurred; and

(k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Idaho Code Ann. § 55–913(2). This list, like the list in 11 U.S.C. § 548(a)(1)(A), is non-exclusive, and thus other factors may be taken into account. *Id.*

Movants raise the same argument against these state law actions as they raised for the avoidance claim under § 548(a)(1)(A), namely that Trustee has not alleged that the specific Transfers were themselves fraudulent transactions. I am unpersuaded. Courts in the Ninth Circuit have recognized the Ponzi presumption and applied it to state uniform fraudulent transfer laws like Idaho's. *See, e.g., Johnson v. Neilson (In re Slatkin)*, 525 F.3d 805, 814 (9th Cir.2008). Therefore, for the same reasons as stated above in my analysis of the § 548(a)(1)(A) count, I find that Trustee has sufficiently pled a claim for the avoidance of actually fraudulent transfers.

*Count Four: Unjust Enrichment*

 As an alternative grounds for relief, Trustee seeks to avoid the Transfers under the equitable doctrine of unjust enrichment. To succeed on an unjust enrichment claim, a plaintiff must show: "(1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance of the benefit under circumstances that would be inequitable for the defendant to retain the benefit without payment to the plaintiff of the value thereof." *Indep. Sch. Dist. of Boise City v. Harris Family Ltd.*

*P'ship*, 150 Idaho 583, 249 P.3d 382, 388 (2011) (citations and internal quotation marks omitted). "Inequity exists if a transaction is inherently unfair." *Id.*

■ Movants argue that Trustee cannot maintain a cause of action for unjust enrichment here because "it is well settled law that where a transaction is governed by a valid contract, claims of unjust enrichment will not lie." (Doc. # 127, at 11.) Movants allege that the Transfers were paid pursuant to contracts between Movants and Debtors, and so Trustee's unjust enrichment claim must be dismissed. (*Id.*) Trustee responds that the Court has not yet found the contracts to be enforceable, and thus he is not precluded from asserting the unjust enrichment claim as an alternative theory.

■ Trustee is correct, in that Idaho courts have held that "only when the express agreement is found to be enforceable is a court precluded from applying the equitable doctrine of unjust enrichment in contravention of the express contract." *Blaser v. Cameron*, 121 Idaho 1012, 829 P.2d 1361, 1366 (Ct.App.1991) (citations omitted). *Accord Thomas v. Thomas*, 150 Idaho 636, 249 P.3d 829, 836 (2011); *Wolford v. Tankersley*, 107 Idaho 1062, 695 P.2d 1201, 1203 (1984). Where it has not been determined that the contracts between Movants and Debtors are valid and enforceable, Trustee can plead a claim for unjust enrichment.

■ Having established that Trustee can maintain an action for unjust enrichment, I must now turn to the question of whether Trustee has alleged sufficient facts to support such a claim. The Complaint must include some factual allegations which, if true, show that it would be inequitable for Movants to retain the Transfers. In the Complaint, Trustee states:

74. Plaintiffs reassert all of the allegations in the foregoing paragraphs of this Complaint as if more fully set forth herein.

75. Defendants and/or defendants John Doe 1–500 were enriched as a result of receiving the Two Year Transfers and the Four Year Transfers described in this Complaint by receiving something of value that belonged to Plaintiff.

76. These enrichments violate equity and good conscience.

77. These enrichments did not result from enforceable agreements between Plaintiff and Defendants.

78. By reason of the forgoing [sic], Defendants and/or defendants John Doe 1–500 should be compelled by this Court to make restitution to Plaintiff in the amount of the Two Year Transfers and the Four Year Transfers.

(Compl. ¶¶ 74–78.) As noted by Movants, Trustee makes no factual allegations supporting the legal conclusion that "these enrichments did not result from enforceable agreements between" Movants and Debtors; that is, Trustee has pled no facts showing why the contracts would be unenforceable. However, given that unjust enrichment is a broad remedy, it is an open question whether the Transfers could be found to "violate equity and good conscience" because they were part of Debtors' Ponzi scheme—none of the parties addressed this question in their briefing. As a result, I will allow Trustee to maintain this count in anticipation of further argument and development of the factual record.

*Count Five: Avoidance and Recovery of Preferential Transfers under 11 U.S.C. § 547, 550, and 551*

■ Section 547 of the Bankruptcy Code enables the trustee to avoid certain transfers made by the debtor to or for the

benefit of a creditor within ninety days before the petition for relief was filed. 11 U.S.C. § 547(b).

Movants argue that Trustee is barred from avoiding the Transfers by 11 U.S.C. § 546(e), which states:

the trustee may not avoid a transfer that is ... a settlement payment as defined in section 101 or 741 of this title, made by or to (or for the benefit of) a ... stockbroker ..., or that is a transfer made by or to (or for the benefit of) a ... stockbroker ... in connection with a securities contract, as defined in section 741(7).

Movants assert that they are "stockbrokers" as defined by the statute, and that the Transfers are either "settlement payments" or transfers made in connection with a "securities contract." Trustee responds that it is inappropriate to consider this affirmative defense at the motion to dismiss stage because it is unclear whether the transactions at issue here fall within the statute's parameters.

Courts in this district have considered the 546(e) defense at the motion to dismiss stage where the defense is clearly established on the face of the complaint. *See, e.g. Brandt v. B.A. Capital Co. LP (In re Plassein Int'l Corp.),* 366 B.R. 318, 323–25 (Bankr.D.Del.2007). Nonetheless, I agree with Trustee that in this case, it is premature to dismiss this count on the basis of the 546(e) defense. The application of the defense is a fact-based inquiry. The only portion of the Complaint explaining Movants' role in the TIC sales reads as follows:

[DBSI Securities], a registered broker-dealer and affiliate of DBSI, marketed and sold the TIC investments on a wholesale basis to various broker-dealers around the United States. The broker-dealers would, in turn, sell the TIC interests to the investing public and receive a commission on those sales.

(Compl. ¶ 16.) It is not clear from this description alone whether Movants are "stockbrokers" as contemplated by the statute, let alone whether the Transfers are "settlement payments." A "stockbroker" is a person who has a customer [6], as defined by 11 U.S.C. § 741(2), and who "is engaged in the business of effecting transactions in securities (i) for the account of others; or (ii) with members of the general public, from or for such person's own account." 11 U.S.C. § 101(53A). *See also* 5 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 546.06[2][e] (16th ed.) (noting that "[a] person who effects some securities transactions (including the pertinent transaction in a 546(e) dispute) but who is not, in a general sense, 'engaged in the business' of effecting such transactions is not a 'stockbroker' under the statute"). Movants must demonstrate that they fit within both prongs of this definition, and the Complaint does not

---

**6.** "customer" includes—

(A) entity with whom a person deals as principal or agent and that has a claim against such person on account of a security received, acquired, or held by such person in the ordinary course of such person's business as a stockbroker, from or for the securities account or accounts of such entity—

 (i) for safekeeping;
 (ii) with a view to sale;
 (iii) to cover a consummated sale;
 (iv) pursuant to a purchase;

 (v) as collateral under a security agreement; or
 (vi) for the purpose of effecting registration of transfer; and

(B) entity that has a claim against a person arising out of—

 (i) a sale or conversion of a security received, acquired, or held as specified in subparagraph (A) of this paragraph; or
 (ii) a deposit of cash, a security, or other property with such person for the purpose of purchasing or selling a security

11 U.S.C. § 741(2).

clearly establish that they do. Further, without any factual details on the TIC sales agreements, I cannot say that the Transfers were made in connection with "securities contracts." Therefore, I will not consider the 546(e) defense at this point.

*Count Six: Avoidance and Recovery of Post–Petition Transfers under 11 U.S.C. §§ 549, 550, and 551*

 Section 549 permits the trustee to avoid certain unauthorized post-petition transfers. 11 U.S.C. § 549(a). A key element to this cause of action is that the transfers at issue must have occurred "after the commencement of the case." *Id.*

Movants argue that Trustee has not identified any Transfers made after the petition date of November 10, 2008. In reviewing the list of Transfers on Exhibit B to the Complaint, I agree with Movants. Moreover, Trustee pleads the cause of action as follows:

93. Plaintiff pleads this Sixth Cause of Action in the alternative and repeats and realleges all of the allegations in the foregoing paragraphs of this Complaint as if more fully set forth herein.

94. Plaintiff brings this cause of action in the event that Plaintiff learns through discovery or otherwise that Defendants received one or more unauthorized post-petition transfers of an interest of the Debtors in property that is avoidable pursuant to section 549 of the Bankruptcy Code ("Post–Petition Transfers").

95. Each of the Post–Petition Transfers, if any, occurred after the applicable Debtors' Petition Date.

96. Each of the Post–Petition Transfers, if any, was authorized only under sections 303(f) or 542(c) of the Bankruptcy Code; or were not authorized under the Bankruptcy Code or the Court.

97. Each of Defendants and defendants John Doe 1–500 are either the initial transferee of the Post–Petition Transfers, if any, or the immediate or mediate transferee of such initial transferee or are the persons for whose benefit the Post–Petition Transfers were made.

98. As of the date hereof, Defendants and defendants John Doe 1–500 have not returned any of the Post–Petition Transfers, if any were made, to the Debtors' estates.

99. As a result of the foregoing, pursuant to sections 549(a), 550 and 551 of the Bankruptcy Code, Plaintiff is entitled to a judgment: (i) avoiding and preserving the Post–Petition Transfers, if any; (ii) directing that the Post–Petition Transfers, if any, be set aside; and (iii) recovering the Post–Petition Transfers, if any, or the value thereof, from the Defendants for the benefit of the Debtors' estates.

(Compl. ¶¶ 93–99.) With this pleading, Trustee concedes that he has not discovered any post-petition transfers made by Debtors to Movants. Even under the pre-*Twombly* relaxed pleading standard applied to trustees in bankruptcy, the trustee in an avoidance action must—at a minimum—plead the existence of a transfer. *See, e.g. OHC Liquidation Trust v. Credit Suisse First Boston (In re Oakwood Homes Corp.),* 340 B.R. 510, 521–22 (Bankr.D.Del.2006). Because Trustee has not alleged that any such post-petition transfers exist, this claim must be dismissed.

*Count Seven: Disallowance of Claims Pursuant to 11 U.S.C. § 502*

 Under § 502(d) of the Bankruptcy Code

the court shall disallow any claim of any entity ... from which property is recoverable under section ... 550 ... or that

is a transferee of a transfer avoidable under section ... 544, 547, 548, 549, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable.

11 U.S.C. § 502(d).

Here, Trustee has not even alleged that Movants filed any proofs of claim. Further, this Court has previously held that a claim under § 502(d) is premature where the trustee does not yet have a judgment against the transferee. *See DHP Holdings II Corp. v. Peter Skop Indus. Inc. (In re DHP Holdings II Corp.)*, 435 B.R. 220, 226 (Bankr.D.Del.2010). Here, Trustee has not obtained a judgment on his avoidance claims. Thus, this count will be dismissed.

## Conclusion

For the reasons detailed above, I will grant the Motion in part and deny it in part. Counts Six and Seven will be dismissed and all other counts will remain.

## ORDER

For the reasons set forth in the Court's memorandum opinion of this date, the joint motion of certain broker-dealer defendants to dismiss all counts of the complaint (Doc. # 123) is granted in part and denied in part. Counts Six and Seven of the Complaint are **dismissed** and all other counts shall **remain.**