200 P.3d 1153

Damian **FARRELL**, Plaintiff–Respondent,

v.

Kent **WHITEMAN**, in his individual capacity, and Whitehorse Properties, LLC, a Michigan limited liability company, Defendants–Appellants.

Kent Whiteman and Whitehorse Properties, LLC, a Michigan limited liability company, Counterclaimants,

v.

Damian Farrell, Counter defendant.

No. 34383.

Supreme Court of Idaho, Twin Falls, November 2008 Term.

Jan. 22, 2009.

---

Speck & Aanestad, P.C., Ketchum, for appellants. Douglas J. Aanestad argued.

Edward Simon, Ketchum, for respondent.

J. JONES, Justice.

Damian Farrell sued Kent Whiteman to recover for architect services he rendered for Whiteman's condominium project in Ketchum. Whiteman asserted that Farrell was not entitled to be compensated because of his failure to comply with Idaho's architect licensing statutes. After a bench trial the district court awarded Farrell damages, and Whiteman appealed. We vacate the damage award and remand for further proceedings to determine damages.

## I.

Farrell, a Michigan-licensed architect, and Whiteman, a real estate developer,[1] both Michigan residents, were friends for many years. Beginning in 2002, Farrell and

---

1. Whiteman is the sole owner of Whitehorse Properties, LLC, also a party to this suit. This opinion will refer to the appellants collectively as "Whiteman."

Whiteman discussed the possibility of working together on a condominium project in Ketchum. Based on their discussions, Farrell understood that he and Whiteman would be partners in the project and that in exchange for his work—which included designing the building, securing site plan approval, overseeing the development of the construction documents, and working as the project architect—he would receive twenty-five percent of the project's profits. Whiteman testified that they discussed a partnership and profit-sharing arrangement, but never reached an agreement regarding how Farrell would be compensated for his architectural services.

Despite the failure of the parties to reach a definite agreement, Farrell worked on the project from the spring of 2003 until the end of July 2004. Farrell hired CAD Design Services (CDS), a Ketchum drafting service without any licensed architects in its staff, to assist in preparing construction documents. Some of Farrell's work was performed in Michigan, where he held an architect's license. However, Farrell also performed some work in Idaho before he received his license to practice architecture in Idaho on February 17, 2004.

In July, 2004, Whiteman terminated Farrell from the project. Even after the project was completed and units had been sold, Whiteman refused to pay Farrell for his work. Farrell filed suit, alleging breach of contract, quantum meruit, and unjust enrichment. Whiteman defended based on Idaho's architect licensing statutes, claiming that because Farrell had not complied with them, the entire contract was illegal and unenforceable. Whiteman also counterclaimed that Farrell breached any contract to provide architectural services by failing to meet deadlines and failing to meet the standard of care required by architects.

After a bench trial, the district court found that, because there was no meeting of the minds, there was no partnership or profit-sharing agreement. However, the court found an implied-in-fact contract and awarded Farrell damages under the theory of quantum meruit, as well as reimbursement for amounts Farrell spent on behalf of Whiteman in furtherance of the project. The court concluded "that Farrell had a license to practice architecture in Idaho at the critical times such a license was necessary" and, therefore, the contract was not illegal. It dismissed the counterclaim and held that Farrell's work was performed adequately. The court also awarded Farrell costs and attorney fees under Idaho Code § 12–120(3). Whiteman appealed to this Court.

## II.

On appeal, we are concerned with three issues: 1) whether the district court erred in concluding that the contract between Farrell and Whiteman was not illegal, 2) whether the district court erred in awarding Farrell damages based on quantum meruit, and 3) whether either party is entitled to attorney fees and costs.

## A.

Whiteman contends that the implied-in-fact contract found by the district court was illegal for two reasons: 1) because Farrell did not have a license to practice architecture in Idaho until midway through his work on the project, and 2) because Farrell's employment of CDS violated another provision of the architect licensing statutes. Farrell counters that because most of his architectural work was performed in Michigan, where he was licensed, the contract was legal.

Whether a contract is illegal is a question of law for the court to determine from all the facts and circumstances of each case. *Trees v. Kersey*, 138 Idaho 3, 6, 56 P.3d 765, 768 (2002). The illegality of a contract can be raised at any stage in litigation. *Id.* In fact, the court has the duty to raise the issue of illegality *sua sponte. Id.* While this Court is bound by the district court's findings of fact unless they are clearly erroneous, it is not bound by the district court's conclusions of law, and may draw its own conclusions from the facts presented. *Griffith v. Clear Lakes Trout Co.*, 143 Idaho 733, 737, 152 P.3d 604, 608 (2007). Thus, we freely review whether or not the contract in this case was illegal.

■ Idaho has long disallowed judicial aid to either party to an illegal contract. *McShane v. Quillin,* 47 Idaho 542, 547, 277 P. 554, 559 (1929) ("No principle in law . . . is better settled than that which, with certain exceptions, refuses redress to either party to an illegal contract."). An illegal contract is one that rests on illegal consideration consisting of any act or forbearance which is contrary to law or public policy. *Quiring v. Quiring,* 130 Idaho 560, 566, 944 P.2d 695, 701 (1997). Generally, when the consideration for a contract explicitly violates a statute, the contract is illegal and unenforceable. *Barry v. Pac. W. Constr., Inc.,* 140 Idaho 827, 832, 103 P.3d 440, 445 (2004). In most cases, the court will leave the parties to an illegal contract as it finds them. *Id.*

### i.

Whiteman argues that the district court erred in determining the contract to be legal based on its finding that Farrell had an Idaho architect's license during "critical times such a license was necessary." Farrell claims this was a factual finding that cannot be overturned unless clearly erroneous. Contrary to Farrell's assertion, the question of contract illegality is one of law, which this Court freely reviews.

Idaho Code § 54–301 reads: "In order to safeguard life, health, and property, and to promote the public welfare, any person practicing or offering to practice architecture, as herein defined, in the state of Idaho, shall submit evidence of his qualifications so to practice and be licensed as hereinafter provided." The code defines "architect" as "a person who engages in the practice of architecture as herein defined." I.C. § 54–309(a). It defines the "practice of architecture" as:

> rendering or offering those services hereinafter described, in connection with the design, construction, enlargement, or alteration of a building or a group of buildings. The services covered within this definition include architectural planning, advice and consultation; providing preliminary studies; architectural designs, drawings and specifications; technical submissions; and, administration of construction contracts.

I.C. § 54–309(c). It further defines the term "technical submissions," as mentioned in the above section, as any "involving the practice of architecture, consist[ing] of designs, drawings, specifications, studies and other technical reports prepared in the course of practicing architecture." I.C. § 54–309(g). Additionally, Idaho Code § 54–310 states that "[a]ny person, not otherwise exempted, who shall practice or offer to practice . . . architecture in this state . . . without first securing an architect's license . . . or who shall violate any of the provisions of this chapter, shall be guilty of a misdemeanor."

The trial court found that Farrell performed some architectural services while in Idaho before he received his license. Nonetheless, the trial court found that because Farrell was licensed at "critical times" he did not violate the statute. We disagree with the district court's interpretation of the architecture licensing statutes.

■ Since the consequences of a court finding a contract to be illegal are harsh, only those contracts which involve consideration that is *expressly* prohibited by the relevant prohibitory statute are void. *See Miller v. Haller,* 129 Idaho 345, 352, 924 P.2d 607, 614 (1996) (holding that a referral agreement did not violate a statute prohibiting agreements to share fees in exchange for medical referrals because it did not involve sharing or splitting fees, which was the activity expressly barred by the statute); *Johnson v. Delane,* 77 Idaho 172, 177, 290 P.2d 213, 216 (1955) (holding that engineer's actions were not "practicing professional engineering *in this state*" because the services were performed in Washington). Such statutes must be narrowly construed, and only those contracts violating express provisions thereof will be deemed illegal.

To support his contention that the contract in this case is legal and enforceable, Farrell cites *Johnson v. Delane.* In that case, Johnson, a Washington-licensed engineer, entered into a contract with Delane to furnish plans and specifications to construct a building in Idaho. *Johnson,* 77 Idaho at 174, 290 P.2d at 214. After Johnson completed the plans, Delane decided not to complete the construc-

tion of the building and refused to pay Johnson for his engineering work. *Id.* Johnson sued for damages, and Delane argued that the contract was illegal, based on Idaho Code § 54–1222, which read: "[a]ny person who shall practice, or offer to practice, professional engineering ... in this state without being registered ... shall be guilty of a misdemeanor." *Id.* at 177, 290 P.2d at 216. After considering the fact that no allegations were made regarding the quality of the plans, this Court held that Johnson's actions did not fall within the language of the statute because his work was not performed "in this state," but instead was performed *entirely* in Washington. *Id.* Farrell argues that this case is similar to *Johnson* because here the district court found that Farrell's architectural work was adequately performed and *most* of the work was completed in Michigan, where he was licensed. Therefore, Farrell argues that the contract was not illegal.

■ We are not persuaded by Farrell's arguments. Farrell admittedly performed *some* architectural services in Idaho before he was licensed. Although courts should interpret statutes narrowly when applying the doctrine of illegality, the district court went too far in interpreting the statute to merely require architects to be licensed at "critical times." This language does not appear anywhere in the statute, and no case law supporting this interpretation was offered. The statute reads "any person practicing or offering to practice architecture ... in the state of Idaho, shall ... be licensed." I.C. § 54–301. This unambiguously requires anyone who practices *any* architecture in Idaho to be licensed as required by the statute. Because Farrell was not licensed to practice architecture in Idaho until February 17, 2004, the architectural services he rendered before then were done pursuant to an illegal contract.

### ii.

Whiteman argues that, even though Farrell obtained his license midway through the project—which arguably may render Farrell's performance after February 17, 2004 legal—the contract continued to be illegal because Farrell employed CDS to prepare construction documents in violation of another provision of the architect licensing statutes. It is uncontested that Farrell paid CDS to prepare construction documents both before and after February 17, 2004. It is also uncontested that the employees of CDS were not licensed to practice architecture and that Farrell and CDS did not share quarters. Whiteman argues that Farrell's actions violated then-existing Idaho Code § 54–307 and rendered the contract void in its entirety. The statute in effect at the time of Farrell's actions read:

> The holder of a license *shall not maintain,* in the practice of architecture, any person who does not hold a license to practice architecture in this state, unless such unlicensed person works under the immediate and personal direction and supervision of his licensed supervisor who shall regularly and customarily attend his business in the same quarters.

I.C. § 54–307(2) (2003) (emphasis added).

■ Farrell argues that because the statute has been changed since his performance, the issue of illegality as to his alleged violation of the statute is moot. However, the doctrine of mootness does not apply to this case. A case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. *Idaho Schs. for Equal Educ. Opportunity v. Idaho State Bd. of Educ.*, 128 Idaho 276, 281, 912 P.2d 644, 649 (1996). An issue is moot if it presents no justiciable controversy and a judicial determination will have no practical effect upon the outcome. *Id.* Although the statute involved here has been amended, this case is not moot. If Whiteman's arguments are correct, he may not be obligated to compensate Farrell. Certainly this demonstrates that the parties have a legally cognizable interest in the outcome, and the Court may proceed to the merits.

■ Whiteman insists that the statute requires an architect to share quarters with any person hired to help draft architectural

documents.[2] According to that interpretation, Whiteman argues that Farrell violated the provisions of the statute because he did not share quarters with CDS. The district court side-stepped the issue by holding that even if Farrell violated the statute by employing CDS without sharing quarters, the appropriate remedy was not a forfeiture of Farrell's earned fees, but disciplinary action brought by the Idaho architectural licensing authorities.

■■■■■ After reviewing the statute, and considering the arguments of the parties, it is clear that the statute only applies to situations where an architect "maintains" an unlicensed employee. The word "maintain" signifies more than the hiring of an independent contractor, but instead contemplates something akin to the employment of an individual. The statute does not apply when an architect merely hires a drafting service for a specific and limited project and does not "maintain" the unlicensed persons. Thus, because CDS was hired only to perform work on one specific project for a limited period of time, Farrell did not "maintain" any unlicensed persons and, therefore, was not required to share quarters with CDS.

### iii.

■■■■■ Although Farrell's work performed while unlicensed was illegal, his actions after receiving his license were certainly legal. "Where a transaction is composed of both benign and offensive components and the different portions are severable, the unobjectionable parts are generally enforceable." *Nelson v. Armstrong,* 99 Idaho 422, 426, 582 P.2d 1100, 1104 (1978). In other words, the implied-in-fact contract in this case is chronologically separable. It was proper for the district court to award damages to Farrell based on quantum meruit for the services he rendered after he received his license. Where the services are severable, a person should not be penalized for the services he performed in compliance with the law. However, because the district court did not specify when Farrell earned his fee, this issue must be remanded for determination by the district court as to the reasonable value of the services provided by Farrell on and after February 17, 2004.

### B.

■■■■■ Whiteman contends that the district court erred in allowing Farrell to recover under the theory of quantum meruit. Instead, Whiteman asserts that Farrell should recover nothing or, at most, recover under the theory of unjust enrichment.

This Court has held that in some circumstances a party to an illegal contract may obtain some relief due to public policy considerations. *Barry,* 140 Idaho at 833, 103 P.3d at 446. In *Barry,* a subcontractor without a public works license brought action for breach of contract and unjust enrichment against the general contractor on a public

---

**2.** The Idaho State Board of Architectural Examiners filed an amicus brief that focuses on whether or not Farrell violated the provisions of the architect's licensing statute. According to the Board, Farrell's arrangement with CDS was violative of former Idaho Code § 54–307(2). An agency's interpretation of its statutes is entitled to deference if a four-prong test is satisfied. *Pearl v. Bd. of Prof'l Discipline of Idaho State Bd. of Med.,* 137 Idaho 107, 113, 44 P.3d 1162, 1168 (2002). First, the agency must have been entrusted with the responsibility to administer the statute at issue. *Id.* Second, the agency's statutory construction must be reasonable. *Id.* Third, the court must determine that the statutory language at issue does not treat the precise issue. *Id.* And finally, a court must ask whether any of the rationales underlying the rule of deference are present. *Id.* If the test is met, the court must give "considerable weight" to the agency's interpretation. *Id.* The rationales include: 1) public groups' reliance on the agency's interpretation over a period of time, 2) the agency's interpretation represents a "practical" interpretation of the statute, 3) the Legislature is charged with knowledge of how its statutes are interpreted, and thus when it does not alter the statute, it presumably sanctions the agency interpretation, 4) agency's interpretation is entitled to additional weight when it is formulated contemporaneously with the passage of the statute at issue, and 5) courts should recognize and defer to the agency's expertise. *J.R. Simplot Co. v. Idaho State Tax Comm'n,* 120 Idaho 849, 857–859, 820 P.2d 1206, 1214–16 (1991). In this case, the Board does not explain how the four-prong test is met. It states only that the amicus brief constitutes an "official position" of the Board. As to the third prong of the test, we find that the statutes speak clearly on the issues involved in this case and thus the test for deference is not met. Accordingly, the Board's conclusions are not entitled to deference.

works construction project. *Id.* On appeal, this Court noted:

This Court has recognized situations in which relief to a party to an illegal contract is warranted to avoid unduly harsh results. In such instances, the Court has awarded damages based on the rationale that, although illegal contracts are unenforceable as a matter of public policy, circumstances arise where denying a party relief would frustrate the public interest more than "leaving the parties where they lie." This Court has stated that, "[b]arring the strict application of the illegality doctrine, the central focus must be whether the ends of the law will be furthered or defeated by granting the relief requested."

*Id.* (quoting *Trees v. Kersey,* 138 Idaho 3, 9, 56 P.3d 765, 771 (2002)).

■ This case is one in which awarding some damages is necessary to protect the public interest. Although Farrell had an obligation to ensure that he was properly licensed while he practiced architecture in Idaho, it would be contrary to the public interest to allow a developer to avoid any payment for architectural services when the work performed was not sub-standard, the building was actually constructed, and several units were sold. The architect licensing statutes aim to protect buyers and the public—who lack knowledge and expertise about architecture—from shoddy work and untrained individuals posing as architects. In this case, although Farrell was not licensed in Idaho for the entirety of his performance, he was a licensed architect in another state. The district court found that Farrell did not breach his duty of care, and that no defects existed in the building Farrell designed. Therefore, to leave the parties as the Court finds them would result in a windfall to Whiteman, who obtained the benefit of a trained and capable architect at zero cost.[3] As stated in Corbin:

[E]ven [in cases where a professional lacks a license] courts do not always deny enforcement to the unlicensed party. The statute clearly may protect against fraud and incompetence. Yet, in very many cases the situation invites neither fraud nor incompetence. The unlicensed party may have rendered excellent service or delivered goods of the highest quality. The noncompliance with the statute may be nearly harmless. The real defrauder may be the defendant who will be enriched at the unlicensed party's expense by a court's refusal to enforce the contract.... Justice requires that the penalty should fit the crime. Justice and sound policy do not always require the enforcement of licensing statutes by large forfeitures going not to the state but to repudiating defendants.

15 CORBIN ON CONTRACTS § 88.3 (2003). To refuse to award Farrell *some* damages would create a perverse incentive for developers to hire unlicensed architects in order to get buildings designed at no cost. Therefore, this Court holds that Farrell is entitled to some recovery.

Whiteman argues that if Farrell is awarded some damages, they should be limited to unjust enrichment damages and not quantum meruit. Whiteman asserts that awarding damages based on quantum meruit would effectively enforce the illegal contract between the parties.

■ We have held that quantum meruit and unjust enrichment are simply different measures of equitable recovery. *Great Plains Equip., Inc. v. Nw. Pipeline Corp.,* 132 Idaho 754, 767, 979 P.2d 627, 640 (1999). Quantum meruit permits recovery of the reasonable value of the services rendered or the materials provided, regardless of whether the defendant was enriched. *Id.* Unjust enrichment, on the other hand, allows recovery where the defendant has received a benefit from the plaintiff that would be inequitable for the defendant to retain without compensating the plaintiff for the value of the benefit. *Id.*

■ In *Barry,* we determined that in the case of an illegal contract, recovery is limited to unjust enrichment. *Barry,* 140 Idaho at 833, 103 P.3d at 446. We held that an illegal contract cannot be enforced, and since quantum meruit is the measure of damages for a

---

**3.** Whiteman argues that he would not receive a windfall because he did not realize a "profit" from his development project due to the poor real estate market in Ketchum, Idaho. However, should this Court relieve him of any obligation to pay an architect for designing the building, Whiteman would have *less* net loss, which amounts to a windfall in our view.

contract implied-in-fact, awarding damages on that theory would effectively enforce the contract and allow a party to "have his illegal objects carried out." *Id.* at 834, 103 P.3d at 447. Where an exception allows some recovery to one party to an illegal contract, the Court held that the measure of recovery is limited to unjust enrichment. *Id.*

Farrell has offered no argument contesting the application of *Barry* to the case of an illegal contract; instead, he simply argues that the contract found by the district court was not illegal. Because this Court has determined that the alleged contract in this case was illegal up until Farrell received his license, *Barry* requires that any damages awarded up to that point be measured by unjust enrichment. Therefore, the case is remanded to the district court to determine whether or not Farrell has sustained damages in unjust enrichment for services provided prior to February 17, 2004, and, if so, in what amount.

### C.

█ Whiteman argues that the district court erred by awarding attorney fees to Farrell under Idaho Code § 12–120(3) because the underlying implied-in-fact contract was illegal. In the case of an illegal contract, neither party may claim the benefit of Idaho Code § 12–120(3). *Trees v. Kersey,* 138 Idaho 3, 12, 56 P.3d 765, 774 (2002); *Kunz v. Lobo Lodge, Inc.,* 133 Idaho 608, 612, 990 P.2d 1219, 1223 (Ct.App.1999). Even when a party is permitted some recovery on an illegal transaction, the court may not award attorney fees under Idaho Code § 12–120(3). *Barry,* 140 Idaho at 835, 103 P.3d at 448. Therefore, the court erred in awarding attorney fees to Farrell based on an implied-in-fact contract, which was, at least up until February 17, 2004, illegal. We vacate the fee award, leaving it to the district court to determine the fee issue on remand.

█ Whiteman requests attorney fees on appeal under Idaho Code § 12–121. Reasonable attorney fees will be awarded to the prevailing party under that section only when the court is left with the abiding belief that the appeal was brought, pursued, or defended frivolously. *Stewart v. Stewart,* 143 Idaho 673, 681, 152 P.3d 544, 552 (2007). Whiteman does not explain how Farrell's defense of this appeal is frivolous. Farrell argued that his actions were legal—despite this Court's holding in *Barry*—based on an extension of *Johnson,* which this Court had not considered prior to this case. Therefore, Farrell's arguments did not lack foundation in law or in fact and Whiteman is not entitled to attorney fees on appeal.

### III.

We vacate the district court's award of damages and attorney fees and remand for further consideration consistent with this opinion. The district court must determine the quantum meruit recovery due for services rendered after Farrell received his Idaho license (February 17, 2004) and the unjust enrichment recovery due, if any, for services rendered prior to licensing. No costs or attorney fees to either party on appeal.

Justices BURDICK, W. JONES, and HORTON and Justice Pro Tem TROUT concur.