**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 50184**

| | | |
|---|---|---|
| **JENNIFER SMITH,** | ) | |
| | ) | |
| **Plaintiff-Counterdefendant-** | ) | |
| **Respondent,** | ) | **Boise, June 2024 Term** |
| | ) | |
| **v.** | ) | **Opinion Filed: December 19, 2024** |
| | ) | |
| **JESSE SMITH,** | ) | **Melanie Gagnepain, Clerk** |
| | ) | |
| **Defendant-Counterclaimant-** | ) | |
| **Appellant.** | ) | |

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Blaine County. Eric J. Wildman, District Judge. R. Barry Wood, Senior District Judge.

The district court's judgment is <u>affirmed</u>.

Silvey Law Office Ltd., Boise, for Appellant Jesse Smith. Greg S. Silvey submitted argument on the briefs.

Michael Donovan, Ketchum, for Respondent Jennifer Smith, submitted argument on the briefs.

_____

MEYER, Justice.

This appeal concerns the spousal support provision of a Marital Settlement Agreement between Jennifer Smith and Jesse Smith.[1] The parties divorced in 2017. Before the divorce decree was entered, Jennifer and Jesse entered into a Marital Settlement Agreement requiring Jesse to pay Jennifer spousal support until January 1, 2025. Two years later, Jennifer filed a breach of contract action against Jesse after he stopped paying spousal support. On a motion for partial summary judgment, the district court concluded that the Martial Settlement Agreement's "Review Term," which states that "[s]pousal support shall be reviewed every two years," without further instruction or definition, was too vague to be enforceable. The district court struck the Review Term from the contract but, under the severability clause, left the remainder of the spousal support provision

---

[1] Because the parties share the same surname, Jesse Smith and Jennifer Smith will be referred to by their first names. No disrespect is intended.

1

enforceable. We affirm the district court's decision because the Review Term is so vague, uncertain, indefinite, and incomplete that it is unenforceable.

## I. FACTUAL AND PROCEDURAL BACKGROUND

After fifteen years of marriage, Jennifer and Jesse divorced in February 2017. Jennifer was a stay-at-home mother during the marriage after they had their first of four children in 2005. Jesse was employed as a construction superintendent working on wind farm turbines. Before the parties' divorce decree was entered, Jennifer and Jesse entered into a Marital Settlement Agreement and a separate Child Custody and Support Agreement. The Marital Settlement Agreement contained a provision requiring Jesse to pay Jennifer $655 for spousal support every two weeks until January 1, 2025. Spousal support was subject to an annual 2% cost of living increase, and any past due amount would be subject to interest of 1.5% monthly, compounded monthly. The Agreement also contained a provision the district court called the Review Term that stated, "Spousal support shall be reviewed every two years." Finally, the spousal support provision was "not merged or incorporated into the Judgment [and Decree of Divorce] and it exists as a separate contractual obligation [between Jennifer and Jesse]."

In November 2018, Jesse unilaterally reduced the spousal support payment to $472 every two weeks. The following month, Jesse petitioned to modify the spousal support amount in the underlying family law case. The magistrate judge dismissed Jesse's claim for modification of spousal support because, under the non-merger clause in the provision, the court did not have jurisdiction to modify the spousal support. Then, in November 2019, Jesse stopped paying Jennifer spousal support altogether.

Jennifer subsequently filed the present case against Jesse for breach of contract in district court, specifically alleging a breach of the spousal support provision in the Marital Settlement Agreement.[2] Jesse filed a counterclaim alleging that Jennifer breached the Marital Settlement Agreement because she did not allow the spousal support provision to be reviewed every two years.

Jennifer filed a motion for partial summary judgment, seeking a judgment from the district court that the Review Term was unenforceable as a matter of law. Jennifer argued that the Review Term in the Marital Settlement Agreement was incapable of enforcement because it was too vague.

---

[2] Jennifer later amended her complaint to allege additional breach of contract claims. Those claims are not at issue in this appeal.

Jennifer further argued that even if the court could determine the parties' intent, the Marital Settlement Agreement does not provide sufficient specificity for a trier of fact to provide a remedy. Jesse conceded that the Review Term was vague but argued that this was not dispositive because the parties' intent created questions of fact to be resolved at the trial. He argued that since the Review Term was an essential term to the contract, the entire Marital Settlement Agreement should be "thrown out." Otherwise, Jesse argued that the Review Term should be construed against Jennifer as the drafter of the contract, who was represented by an attorney while he represented himself during the negotiations. During oral argument, the court requested guidance from Jesse regarding the remedy if the issue was left to the jury. Jesse asserted that the jury should be permitted to modify his spousal support obligation by considering the Idaho Code section 32-705(2) factors.

After argument, the district court determined that the review requirement in the spousal support provision was unenforceable because it was "vague, indefinite, and uncertain." The district court rejected Jesse's proposed remedy of having the jury modify his spousal support obligation by considering the Idaho Code section 32-705(2) factors. The district court determined that even though the Review Term was unenforceable, under the Marital Settlement Agreement's severability clause, the rest of the Marital Settlement Agreement was not affected.

Jesse filed a motion for reconsideration that primarily repeated the arguments in his objection to Jennifer's motion for partial summary judgment. The district court denied Jesse's motion. The case proceeded to a two-day jury trial on the issues of whether Jennifer sustained damages from Jesse's breach of the Marital Settlement Agreement and, if so, what amount of damages Jesse owed Jennifer. The jury was instructed that it was undisputed that Jesse breached the Marital Settlement Agreement "by failing to pay agreed-to amounts of spousal support to Jennifer." The jury found that Jesse's breach of the Marital Settlement Agreement damaged Jennifer. The jury found that the total amount of damages Jennifer sustained for spousal support through the trial date was $76,514. The district court awarded Jennifer $35,651.25 in attorney fees and $2,671.35 in costs as the prevailing party under Paragraph 23 of the Marital Settlement Agreement or, alternatively, under Idaho Code section 12-121. The district court entered judgment against Jesse for $76,514 for breach of the Marital Settlement Agreement and $38,322.60 for attorney fees and costs. Jesse timely appealed.

3

## II.    ISSUES ON APPEAL

1. Did the district court err when it granted Jennifer's motion for partial summary judgment?

2. Is either party entitled to attorney fees on appeal?

## III.    STANDARDS OF REVIEW

When this Court considers "an appeal from the granting of a motion for summary judgment, this Court's standard of review is the same as that used by the trial court in passing on the motion." *Kelly v. Kelly*, 171 Idaho 27, 34, 518 P.3d 326, 333 (2022) (citations omitted). Summary judgment is appropriate "if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." I.R.C.P. 56(a). If the record shows no genuine issue of material fact, "only a question of law remains, over which this Court exercises free review." *Kelly*, 171 Idaho at 34, 518 P.3d at 333 (citation omitted).

## IV.    ANALYSIS

### A.    The district court properly granted partial summary judgment because the Marital Settlement Agreement's Review Term was unenforceable.

Jesse requests that this Court reverse the district court's order granting partial summary judgment, which would reverse the downstream orders, jury verdict, and attorney fees award. Jesse assigns the district court three points of error. First, Jesse argues that the Review Term was not so vague as to be unenforceable. Second, Jesse argues even if the Review Term is vague, the ambiguity warrants the use of extrinsic evidence to determine the parties' intent; therefore, the district court erred by granting partial summary judgment because a genuine issue of material fact for the jury remained. Third, as an alternative argument, Jesse argues that the district court misapplied the severability clause when removing the Review Term but keeping the spousal support provision intact. Jesse asserts that the entire spousal support provision should be stricken, rather than striking only the Review Term.

While there is an underlying emotional element to this matter that is so common to family law cases, it is grounded in the principles of contract law. A marital settlement agreement is a contract. *See* I.C. § 32-917 (setting forth the requirements for "contracts for marriage settlements"). And while the Marital Settlement Agreement was incorporated by reference into the Judgment and Decree of Divorce, there was an express provision that stated the spousal support provision would not be merged into the decree of divorce and would remain a separate contractual obligation. The parties' dispute focuses on the Review Term in Paragraph 8 that states, "[s]pousal support shall be

4

reviewed every two years." Paragraph 8 addressed spousal support between the parties. In full, it provides:

> 8. <u>Maintenance ("Spousal Support") pursuant to Idaho Code § 32-705.</u> The parties agree that the wife lacks sufficient property to provide for her reasonable needs and is unable to support herself through employment. The parties further agree that based on all relevant factors, including but not limited to those specified in Idaho Code § 32-705(2), that Husband shall pay to wife an amount of Spousal Maintenance as follows: Husband shall pay to Wife a base amount of Seventeen Thousand and Thirty Dollars ($17,030.00) per year, to be paid by installments made every two weeks (Twenty-Six (26) payments per year), with each installment to be in a bi-weekly amount of Six Hundred Fifty-Five Dollars ($655.00). Payments shall commence with Husband's receipt of his first paycheck after entry of the Judgment. Those payments shall be made directly from Husband's employer by direct deposit into an account designated by Wife.
>
> There shall be a 2% cost of living increase each year over the amount paid during the previous year. As a means of example, the bi-weekly amount to be paid shall increase to Six Hundred Sixty-Eight Dollars and Ten Cents ($668.10) on January 1, 2018. Payments shall be made through and including January l, 2025. If Husband fails to pay such obligation on the date due, all sums due shall bear interest at monthly [sic] of 1.50%, compounded monthly. Spousal support shall be reviewed every two years. Payments shall be made by direct deposit into Chase account xx8508.
>
> Husband and Wife are entering into this obligation in a separate agreement. Such agreement is enforceable in contract outside of the Judgment that will incorporate this Agreement. This provision, by this reference, is not merged or incorporated into the Judgment and it exists as a separate contractual obligation between the Parents.

### 1. The Review Term is vague, indefinite, uncertain, and incomplete.

The district court determined that the Review Term was unenforceable because it was "vague, indefinite, and uncertain." The court explained:

> In reading the term, the [c]ourt is unable to ascertain what the parties agreed to do by including it in the *Marital Settlement Agreement*. The Review Term does not identify what is required of the parties with respect to the review contemplated therein. It does not define how or if the parties should contact and/or meet with each other, or whether such contact or meeting is necessary. It does not define what information is relevant to reviewing spousal support, nor whether that information should be exchanged between the parties. It does not define what criteria will be used by the parties in review or how any changes to the spousal support obligation should be achieved. Moreover, the Review Term does not contemplate that the parties must come to an agreement to alter spousal support as a result of such review or what is the consequence of not reaching an agreement. Rather, the term only requires the parties [to] review spousal support without further instruction or definition.

5

Jesse asserts that he and Jennifer mutually understood that they would discuss spousal support and work out issues between themselves, indicating a clear intent behind the Marital Settlement Agreement. Jennifer disagrees and maintains that there was no meeting of the minds and that neither party could say exactly what the Review Term required them to do. An agreement that is so vague, indefinite, and uncertain that the intent of the parties cannot be ascertained is unenforceable. *Griffith v. Clear Lakes Trout Co., Inc.*, 143 Idaho 733, 737, 152 P.3d 604, 608 (2007) (citing *Barnes v. Huck*, 97 Idaho 173, 178, 540 P.2d 1352, 1357 (1975)). On the other hand, "[a] contract term is ambiguous when there are two different reasonable interpretations or the language is nonsensical." *Thurston Enters., Inc. v. Safeguard Bus. Sys., Inc.*, 164 Idaho 709, 717, 435 P.3d 489, 497 (2019) (quoting *Phillips v. Gomez*, 162 Idaho 803, 807, 405 P.3d 588, 592 (2017)).

We conclude, as the district court did, that the Review Term is unenforceable for several reasons. First, it needs more specificity regarding procedural details. It is unclear whether "review" means a formal legal review by a court, an informal negotiation between the parties, or the involvement of a mediator. It does not describe how the review process will be carried out, and there are no details on when the review should occur during the two-year period. This uncertainty is reflected in Jesse's expectations, as revealed in his testimony:

> [Mr. Donovan:] How did you anticipate that this -- what would have been the process, in your mind, as to how this spousal support would be reviewed?
>
> [Jesse:] That as -- if things were to change that Jennifer and I would just discuss it ourselves and amend as necessary.
>
> [Mr. Donovan:] So was it something you were going to -- was there anything specific about how this was going to work that you had agreed to?
>
> [Jesse:] I don't remember any specifics.
>
> . . . .
>
> [Mr. Donovan:] And so what was the expectation that you had as to how you would get together after two years?
>
> [Jesse:] Well, it could be a phone call or an e-mail or a face-to-face conversation. I didn't really have any expectation other than it would just happen in some way.
>
> [Mr. Donovan:] It wasn't necessarily required that she contact you?
>
> [Jesse:] No.
>
> [Mr. Donovan:] Was there any expectation as to you contacting her?
>
> [Jesse:] No.

Second, the Review Term is uncertain. It does not mention what specific criteria will be used to conduct the review, and there is no guidance regarding what evidence or documentation is required for either party to support the review or any potential adjustments. According to Jesse's testimony, there was no "expectation at the time [he] signed [the] agreement as to what kind of information that might be exchanged" between the parties.

Jesse suggests that the jury can use the factors in Idaho Code section 32-705(2) to determine the appropriate spousal support amount given the changing circumstances of the parties. Jennifer argues that this statute is only applicable in divorce actions, and because the parties carved the spousal support provision out of the divorce decree, section 32-705 is inapplicable. The district court essentially agreed, ruling that

> Idaho Code [section] 32-705 is part of Idaho's domestic relations statutes. It provides that in a divorce proceeding, "the court may grant a [spousal] maintenance order" under certain circumstances pursuant to the criteria set forth therein. I.C. § 32-705. Thus, the authority set forth in Idaho Code [section] 32-702 [sic] vests in the Magistrate Court in a divorce proceeding. The instant action is not a divorce proceeding and is not before the Magistrate Court. It is a breach of contract action with the trier of fact being a jury. Idaho Code [section] 32-702 [sic] does not grant a jury in such an action the authority to modify the [Jesse's] spousal support obligation under the criteria set forth therein.

Not only is this not a divorce action, but this is also not an action for modification of a divorce decree. The parties made the determination to enter into the spousal support provision "in a separate agreement" and "outside of the Judgment [and Decree of Divorce]." Further, the parties agreed that the spousal support provision was not "merged or incorporated into the Judgment and it exists as a separate contractual obligation" between the parties. There is, however, another, more compelling reason that Idaho Code section 32-705 does not support Jesse's position, which is that using the statute as guidance for interpreting the Review Term would only serve to rewrite the provision and add terms that never existed. Accordingly, the district court did not err in determining that Idaho Code section 32-705 was not applicable to the spousal support provision in this breach of contract action.

Third, the Review Term does not define the outcome of the review. Without further guidance, the review could imply anything from a strict automatic adjustment of spousal support based on certain criteria to a flexible discussion between the parties without any binding outcome. Jesse expected they would renegotiate and reduce the spousal support he was required to pay, but he also understood that the Review Term did not require Jennifer to agree to anything.

7

[Mr. Donovan:] In your mind, if the circumstances had not changed in that two-year period, would it have been that the alimony would also not change?

[Jesse:] Yeah. It seemed that had every circumstance stayed the same, then yeah.

. . . .

[Mr. Donovan:] And where in this agreement is there a provision as to what would happen if you did not review?

[Jesse:] I don't know. It's probably not in there.

. . . .

[Mr. Donovan:] Nothing in this agreement required Jennifer to agree to any specific reduction.

[Jesse:] Okay. No.

[Mr. Donovan:] Correct?

[Jesse:] I don't know.

[Mr. Donovan:] Her obligation was to review it, not to agree to anything.

[Jesse:] Okay.

Conversely, Jennifer only expected that they would "see where [they] stood" regarding "life changes."

Finally, the Review Term's enforcement is incomplete. It does not specify how the review findings will be enforced if one party refuses to comply with the results. It is unclear whether the review findings need to be formally incorporated into a new agreement or into a court order to be enforceable.

Considering the spousal support provision as a whole, the Review Term did not meet the requirement of a clear "meeting of the minds" necessary for contract formation, making it unenforceable. Jesse conflates ambiguity with vagueness. The Review Term is not subject to reasonable conflicting interpretations and is not nonsensical; rather, it is vague, uncertain, incomplete, and indefinite, making it unenforceable. Therefore, we conclude that the district court correctly determined that the Review Term was unenforceable due to its vagueness, indefiniteness, and uncertainty.

2. No question of fact remains for the jury to resolve.

In its ruling regarding the Review Term's enforceability, the district court explained that

[a]s the [c]ourt cannot ascertain what the parties agreed to do by including the Review Term in the *Marital Settlement Agreement*, the term cannot provide a basis for determining the existence of a breach or for giving an appropriate remedy. On the same basis, the [c]ourt is unable to ascertain the adequacy of performance by

8

the parties under the Review Term. Were this [c]ourt to attempt to enforce the Review Term, it would in effect have to formulate what constitutes review as well as the criteria and procedures governing how it is to occur. The [c]ourt cannot enforce a term that is so vague it is forced to define and formulate the obligations of the parties thereunder.

The district court reconsidered Jesse's arguments and viewed the facts in a light most favorable to Jesse. The district court highlighted that Jennifer and Jesse "agree there is no requirement that any adjustments be made to [Jesse's] spousal support obligation as a result of the Review Term. That is, one party cannot compel the other to make any adjustments under the Review Term." The district court relied on Jesse's deposition where he acknowledged that Jennifer's "obligation was to review it, not to agree to anything."

Jesse argues that the Review Term's ambiguity warranted extrinsic evidence to determine the parties' intent. According to Jesse, the jury, not the district court, should ultimately decide the parties' intent regarding the Review Term. Jennifer argues that the trier of fact cannot fashion a remedy.

When a contract is clear and unambiguous, determining a contract's meaning and legal effect are questions of law for the court to decide. *See Darrow v. White*, 172 Idaho 272, 282, 531 P.3d 1169, 1179 (2023). Merely ambiguous contract terms, as to which there are different reasonable interpretations, present issues of fact for a jury. *See id.* This Court stated as much in *Griffith*, 143 Idaho at 737, 152 P.3d at 608, but explained the difference between ambiguous terms and terms that are so vague as to be unenforceable:

Generally the presence of an ambiguous term in a contract document presents an issue of interpretation, requiring the trier of fact to determine the intent of the parties. In some cases, however, parties attribute such different meanings to the same term that there has been no "meeting of the minds" which is necessary for contract formation. An agreement that is so vague, indefinite and uncertain that the intent of the parties cannot be ascertained is unenforceable, and courts are left with no choice but to leave the parties as they found them.

*Id.* (citations omitted).

Jesse contends that the jury could determine his and Jennifer's intent with respect to the Review Terms, but "[a]n enforceable contract must contain the essential terms of agreement and not be too vague, indefinite, or uncertain as to those terms." *Silicon Int'l Ore, LLC v. Monsanto Co.*, 155 Idaho 538, 547, 314 P.3d 593, 602 (2013). If we accept Jesse's position, we will effectively countenance a rewrite of the Review Term by a jury. In short, the district court did not err in granting partial summary judgment on the issue of the unenforceability of the Review Term.

9

3. <u>The remainder of the spousal support provision is enforceable under the Agreement's severability clause.</u>

The next question is whether the unenforceability of the Review Term renders the entire spousal support provision unenforceable. The district court determined that even though the Review Term was unenforceable because it was so vague, uncertain, and indefinite, under the Marital Settlement Agreement's severability clause, the remainder of the Marital Settlement Agreement was not affected. Jesse argues that the district court failed to analyze whether the spousal support provision could stand without the Review Term. Jesse asserts that since the Review Term in the agreement to pay spousal support was essential to him, striking only the Review Term while keeping the spousal support provision until 2025 creates an unjust result for Jesse. Jesse argues further that, as the drafter, Jennifer should bear the consequences of the unenforceable Review Term, and as a result, the entire spousal support provision should be stricken. Jennifer counters that Jesse is essentially arguing that the severability clause can only apply on the document level or paragraph level, not at the individual provision, sentence, or clause level. She also highlights the sentence, "Husband and Wife are entering into this obligation in a separate agreement" in paragraph 8 and argues that because the entirety of the spousal support agreement is separate to the rest of the Marital Settlement Agreement each provision within paragraph 8 is severable.

> Our standard to determine a contract's severability is well established:

> Whether a contract is entire or severable depends on *the intention of the parties* which *is to be ascertained* and determined, when the contract is unambiguous, *from the subject matter of the agreement and the language used* therein, taking the agreement as a whole and not its separate parts without regard to one another.

*Magic Valley Radiology Assocs., P.A. v. Pro. Bus. Servs., Inc.*, 119 Idaho 558, 566–67, 808 P.2d 1303, 1311–12 (1991)) (emphasis added) (citation omitted). In essence, when interpreting a contract, we begin with the document's plain language. *Kelly v. Kelly*, 171 Idaho 27, 39, 518 P.3d 326, 338 (2022) (citation omitted). When the document is unambiguous, it "must be construed in its plain, ordinary and proper sense, according to the meaning derived from the plain wording of the instrument." *Id.* (quoting *Potlatch Educ. Ass'n v. Potlatch Sch. Dist. No. 285*, 148 Idaho 630, 633, 226 P.3d 1277, 1280 (2010)). The Marital Settlement Agreement contains a severability clause which provides that the invalidity of one term does not affect the validity of the remainder of the Agreement. Specifically, Paragraph 17 provides,

17. <u>Provisions Severable</u>. Every provision of this Agreement is intended to be severable. If any term or provision hereof is illegal or invalid for any reason whatsoever, such illegality or invalidity shall not affect the validity of the remainder of the Agreement.

The Review Term is severable from the remainder of the Marital Settlement Agreement under its unambiguous severability clause. Jesse's argument discounts the plain language of the severability clause. Under Paragraph 17, "if any term"—such as the Review Term—is "invalid for any reason whatsoever, such . . . invalidity shall not affect the validity of the remainder of the Agreement." The language of the severability clause demonstrates the parties' intent to maintain the enforceability of other terms, even if one provision fails.

The dissent criticizes our decision for not considering the parties' intentions and relying only on the Agreement's severability clause. The dissent, however, glosses over the primary step in construing any contract. If unambiguous, we do not look beyond the four corners of the document. *Houston v. Houston*, 172 Idaho 264, 271, 531 P.3d 1161, 1168 (2023) (citing *Stanger v. Walker Land & Cattle, LLC*, 169 Idaho 566, 573, 498 P.3d 1195, 1202 (2021)). Because the severability clause is unambiguous, taking the agreement as a whole, there is no need for interpretation. To ascertain the parties' intent, we do not consider Jesse's affidavit in opposition to Jennifer's motion for summary judgment. Nor do we consider what may or may not have been included in a prior iteration of the Agreement. *See id.* ("[I]ntent as expressed in prior iterations of an amended document is irrelevant when that document is plain and unambiguous.").

Next, we have recognized that "[w]here a transaction is composed of both benign and offensive components and the different portions are severable, the unobjectionable parts are generally enforceable." *Taylor v. Taylor*, 163 Idaho 910, 917, 422 P.3d 1116, 1123 (2018) (alteration in original) (quoting *Farrell v. Whiteman*, 146 Idaho 604, 611, 200 P.3d 1153, 1160 (2009)). The remainder of the Marital Settlement Agreement is not affected because the Review Term is unenforceable. Striking only the Review Term aligns with the severability clause's purpose of preserving enforceable terms without rewriting the contract. The district court therefore correctly applied the unambiguous severability clause in the Marital Settlement Agreement and did not err in leaving the remainder of the spousal support provision enforceable.

In summary, Jesse's obligation to pay spousal support until January 1, 2025, is firmly rooted in the Marital Settlement Agreement's explicit and unambiguous terms. The Review Term does not alter this obligation, as it lacks language that mandates changes to the payment schedule

or amount based on review alone. The district court correctly granted partial summary judgment in Jennifer's favor.

**B.     Jennifer is entitled to attorney fees on appeal.**

Both parties seek attorney fees and costs on appeal under paragraph 23 of the Marital Settlement Agreement, Idaho Code section 12-121, and Rules 40 and 41 of the Idaho Appellate Rules.

Paragraph 23 of the Marital Settlement Agreement provides:

> 23. <u>Subsequent Attorney's Fees</u>. In the event of any action or proceeding brought by either Party against the other under this Agreement, the prevailing Party shall be entitled to recover attorney's fees in any such action or proceeding, including costs of appeal, if any, in such amount as the court may adjudge reasonable as attorney's fees. In addition, should it be necessary for either Party to employ legal counsel to enforce any of the provisions of the Agreement, then the other Party agrees to pay all attorney's fees, accounting fees and costs reasonably incurred even if no litigation is commenced.

Jennifer is the prevailing party. Therefore, she is entitled to attorney fees on appeal under paragraph 23 of the Marital Settlement Agreement. Because we award attorney fees on appeal under the Marital Settlement Agreement, we do not address attorney fees under Idaho Code section 12-121. Costs are awarded to Jennifer under Rule 40 of the Idaho Appellate Rules.

## V.     CONCLUSION

For the foregoing reasons, we affirm the district court's grant of partial summary judgment in Jennifer's favor. Jennifer is entitled to attorney fees and costs on appeal.

Chief Justice BEVAN and Justice MOELLER CONCUR.


ZAHN, J., dissenting in part.

I concur fully in the majority's analysis and conclusion that the Martial Settlement Agreement's Review Term is unenforceable. However, I do not agree with the majority's conclusion that the remainder of the spousal support provision is enforceable under the Marital Settlement Agreement's severability clause. For the reasons discussed below, I would conclude that there exists a genuine issue of material fact concerning whether the severability clause should be applied to strike the entire spousal support provision or just the Review Term.

"A marital settlement agreement is a contract." *Van Orden v. Van Orden*, 170 Idaho 597, 606–07, 515 P.3d 233, 242–43 (2022) (citing I.C. § 32-917). By its own terms, the spousal support provision of the Marital Settlement Agreement was not merged into the Divorce Decree. Instead,

that provision is enforceable through a separate action for breach of contract. Jennifer commenced this action for breach of contract. As a result, we apply contract principles to this case.

The issue presented is whether the district court erred in severing only the Review Term from the spousal support provision. This turns on the intent of the parties: "[t]he question of the severability of a contract is one that requires discerning the parties' intent." *Taylor v. Taylor*, 169 Idaho 806, 816, 504 P.3d 342, 352 (2022) (citing *Magic Valley Radiology Assocs., P.A. v. Prof'l Bus. Servs., Inc.*, 119 Idaho 558, 567, 808 P.2d 1303, 1312 (1991)). "The intention to have the contract be severable must be apparent, otherwise 'the court imposes upon the parties a contract to which they have not assented, and which in all likelihood would not have voluntarily made.' " *Id.* (cleaned up) (quoting *Coppedge v. Leiser*, 71 Idaho 248, 252, 229 P.2d 977, 979 (1951)).

The district court did not consider the parties' intentions when it severed the Review Term from the Agreement, but instead relied solely on the fact that the Agreement contained a severability clause. The majority does the same, relying only on the "plain language of the severability clause." However, a severability clause, while highly suggestive that the parties here intended any term of the Agreement to be severable, is not the only consideration as to whether the parties' intended the Review Term to be severable. While this Court has never conclusively ruled on the impact of a severability clause on a contract, relevant legal authority suggests that the existence of a severability clause, while highly informative, is not conclusive as to the severability of a contract. 17A C.J.S. *Contracts* § 460 (2020) ("[A] declaration in the contract that it is severable or divisible generally is but an aid to construction."); 15 Richard A. Lord, *Williston on Contracts* § 45:5 (4th ed. 2014) ("An express provision that the contract shall be divisible, while not always regarded as conclusive, will generally be given considerable weight."); *Moffat Tunnel Improvement Dist. v. Denver & S.L. Ry. Co.*, 45 F.2d 715, 731 (10th Cir. 1930) (A severability clause "is but an aid to construction, and will not justify a court in declaring a clause as divisible when, considering the entire contract, it obviously is not."); *John R. Ray & Sons, Inc. v. Stroman*, 923 S.W.2d 80, 87 (1996) ("[W]hen the severed portion is integral to the entire contract, a severability clause, standing alone, cannot save the contract."); *Figueredo-Chavez v. RCI Hosp. Holdings, Inc.*, No. 1:21-cv-21733-KMM, 2022 WL 457848, at *3 (S.D. Fla. Jan. 6, 2022) ("The presence of a severability clause is evidence that the parties intended for the contract to be severable."); *Mad River Boat Trips, Inc. v. Jackson Hole Whitewater, Inc.*, 803 P.2d 366, 369 (Wyo. 1990) ("A severability clause cannot operate to effectuate a result which is contrary to the

13

intent of the parties."); *Southland Nat'l Ins. Corp. v. Lindberg*, 889 S.E.2d 512, 519–20 (N.C. Ct. App. 2023) ("While not determinative, the decision to include a severability clause in an agreement may provide general guidance when determining the parties' intent.").

Evidence concerning the parties' intent regarding the spousal support term exists in the form of Jesse Smith's affidavit in opposition to Jennifer Smith's motion for summary judgment, in which Jesse swore that he would not have signed the Agreement without the inclusion of the Review Term:

> The provision "[s]pousal support shall be reviewed every two years", was an *essential term* of the contract[.] *I would not have signed the Marital Settlement Agreement without it*, it was integral to the negotiations of the amount. To remove it would grant a windfall to one party. The provision that the parties were forced to modify the amount every 2 years is a part of the negotiated amount and *cannot be removed.*

(First alteration in original; emphasis added.) Jennifer admitted in her deposition testimony that the Review Term was not in the first draft of the Marital Settlement Agreement but was put into the Agreement at Jesse's request after he reviewed the document.

This evidence establishes a genuine issue of material fact as to whether the Review Term is severable from the remainder of the spousal support provision of the Agreement. The genuine issue of material fact is whether Jesse would have agreed to the spousal support provision without the Review Term. The severability provision does not definitively answer that question but is simply evidence disputing Jesse's contention that the Review Term is not severable from the spousal support provision.

"Whether the parties intended an agreement to be nonseverable is 'essentially a question of fact to be determined by the trier of fact.'" *Taylo*r, 169 Idaho at 816, 504 P.3d at 352 (quoting *Magic Valley Radiology*, 119 Idaho at 567, 808 P.2d at 1312). By severing the Review Term without considering the intent of the parties, there is a danger that the district court "impose[d] upon the parties a contract to which they have not assented, and which in all likelihood would not have voluntarily made." *Taylor*, 169 Idaho at 816, 504 P.3d at 352 (cleaned up) (quoting *Coppedge*, 71 Idaho at 252, 229 P.2d at 979).

Lastly, we "must disregard all errors and defects that do not affect any party's substantial rights." I.R.C.P. 61. "A right is substantial if it could affect the outcome of litigation." *Bromund v. Bromund*, 167 Idaho 925, 932, 477 P.3d 979, 986 (2020). Jesse's substantial rights were prejudiced because, if a jury finds that it was not the intent of the parties' that the Review Term was severable,

14

then the entire spousal support provision would be struck. Without the spousal support provision, Jennifer's claim against Jesse must fail, changing the entire outcome of the litigation. Accordingly, the district court's error affected Jesse's substantial rights.

Because there is a genuine issue of material fact concerning whether the Review Term is severable from the rest of the spousal support provision of the Agreement, the district court erred in granting summary judgment and the issue should be remanded for a jury trial on the issue of severability. For the reasons discussed herein, I respectfully dissent from the majority's opinion.

Justice BRODY CONCURS.